# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00988-SCT

*FRANKLIN COLLECTION SERVICE, INC.*

*v.*

*PATTY KYLE*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2005 |
| TRIAL JUDGE: | HON. CHARLES R. BRETT |
| COURT FROM WHICH APPEALED: | LEE COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM V. WESTBROOK, III |
| | JOHN PAUL BARBER |
| ATTORNEY FOR APPELLEE: | FRANK A. RUSSELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED IN PART; REVERSED AND RENDERED IN PART - 04/26/2007 |
| MOTION FOR REHEARING FILED: | 01/25/2007 |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.   The appellee's motion for rehearing is denied. The previous opinions are withdrawn and these opinions are substituted therefor.

¶2.   This is a suit on open account to collect an unpaid medical bill. The medical services provider assigned its open account claim to a collection agency which, in turn, attached to its "open account" complaint an itemized listing of the code names and amounts charged for each service, as well as the history of payment and past due amounts. The patient responded with a counterclaim against both the collection agency and the medical services provider

alleging violation of the physician-patient privilege and invasion of privacy.[1] The collection agency moved for summary judgment, which the trial court denied. We granted the collection agency permission to bring this interlocutory appeal presenting the question of whether there were triable issues of fact to be presented to the jury on either of the patient's claims. *See* M.R.A.P 5.

## BACKGROUND FACTS AND PROCEEDINGS

¶3.     Patty Kyle received medical treatment from Urology, P.A. ("Urology"). When she did not pay her $6,390.00 past due account, Urology assigned its claim on the open account to Franklin Collection Service, Inc. ("Franklin") to collect.

¶4.     On June 25, 2003, Franklin filed suit under the "open account" statute, Miss. Code Ann. Section 11-58-81 (Rev. 2002), seeking recovery of the unpaid medical bill, attorney's fees, and court costs. Attached to the complaint was an itemized statement of Kyle's medical bill listing the codes for various services rendered by Urology:[2]

| | | |
|---|---|---|
| ADM D/C SAME DATE COMPHR | 99235-25 | $   410.00 |
| URETEROSCOPY WITH LITHOTR | 52353 | $4,020.00 |
| CYSTOSCOPY, STONE MANIP | 52320-51 | $1,100.00 |
| CYSTOSCOPY, INSERTION DOUBLE J STENT | 52332-51 | $   860.00 |
| POST-OP VISIT INCLUDED IN GLOBAL PACKAGE | 99024 | $       0.00 |
| KUB SINGLE AP VIEW | 74000 | $     90.00 |

---

[1] We note that the question of whether certain information is *privileged* requires a different analysis than the question of whether that same information is *private*. Stated differently, information can be non-privileged and yet, at the same time, be private and protected.

[2] The itemization used the American Medical Association's ("AMA") Current Procedural Terminology ("CPT") codes. Other information on the exhibit is not relevant to this case.

¶5.     Kyle responded to the complaint by filing an "Answer and Counter Complaint"[3] against both Urology and Franklin for "violating the medical privilege of [Kyle] by causing confidential medical information to be attached to the Complaint filed in this cause and published as a matter of public record." Kyle also alleged severe emotional distress and invasion of privacy and sought compensatory and punitive damages from both parties. Franklin, joined by Urology, moved for summary judgment on Kyle's counterclaim.

¶6.     On February 11, 2005, the trial court denied the motion, stating as its reason that this was a case of first impression. Franklin filed a motion to reconsider, which the trial court denied. Franklin then moved for leave to take an interlocutory appeal, which this Court granted. *See* M.R.A.P. 5.

¶7.     Although Franklin and Kyle raise numerous issues on appeal, we need only address the following three: (1) whether the information attached to Franklin's "open account" complaint was privileged under the statutes enacted by the Legislature or the rules promulgated by this Court; (2) whether Franklin was entitled to summary judgment on Kyle's claim for negligent or intentional infliction of emotional distress; and (3) whether Franklin was entitled to summary judgment on Kyle's claim for invasion of privacy.

## DISCUSSION

¶8.     Our standard of review in this interlocutory appeal is mixed. As to Kyle's claim that the defendants violated her physician-patient privilege, we are called upon to interpret a

---

[3] Although the record does not reflect that Kyle sought permission to file her third-party claim against Urology, as required by Mississippi Rules of Civil Procedure 13, 14, 19, and 20, the issue was not raised by the parties, and we shall not address it here.

3

statute and an evidentiary rule. The law is settled that "[s]tatutory interpretation is a matter of law which this Court reviews de novo." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1206 (Miss. 2002) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 165 (Miss. 1999)). We have also stated that "[t]he application of privilege is properly a mixed question of law and fact, with the [trial court's] factual findings reviewed for clear error and its interpretation of the law reviewed de novo." *Hewes v. Langston*, 853 So. 2d 1237, 1241 (Miss. 2003) (citing *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)).

¶9.     We must also consider the trial court's denial of Franklin's motion for summary judgment on Kyle's claims of negligent and intentional infliction of emotional distress and invasion of privacy. Summary judgment is governed by Mississippi Rule of Civil Procedure 56. We review de novo a trial court's disposition of a motion for summary judgment. *Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006). In conducting our review, the evidence must be viewed in the light most favorable to the non-moving party. *Hataway v. Estate of Nicholls*, 893 So. 2d 1054, 1057 (Miss. 2005). The movant carries the burden of demonstrating that no genuine issue of material fact exists. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). In responding to a motion for summary judgment,

> an adverse party may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be entered against him [or her].

Miss. R. Civ. P. 56(e). *See also Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005) (summary judgment for the movant should be entered if no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law).

4

**I.** **Whether the information attached to Franklin's "open account" complaint was privileged under the statutes enacted by the Legislature or rules promulgated by this Court.**

¶10. The primary issue in this case is whether the itemized statement of account attached to the complaint is covered and protected by the physician-patient privilege. We begin our analysis by noting that the physician-patient privilege did not exist at common law. *See Whalen v. Roe*, 429 U.S. 589, 602 n.28, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977). Thus, the medical privilege exists in Mississippi only to the extent of the narrow privilege created by Section 13-1-21 of the Mississippi Code, and the broader privilege created by Rule 503 of the Mississippi Rules of Evidence.

*Miss. Code Ann. Section 13-1-21*

¶11. Pursuant to Miss. Code Ann. Section 13-1-21(1) (Rev. 2002), "[a]ll *communications made to* a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor *by a patient* under his [or her] charge or by one seeking professional advice are hereby declared to be privileged . . . ." (Emphasis added). Initially, we note that Section 13-1-21 does not claim to be a substantive law of general application, but rather an evidentiary statute to be applied in the courts. The statute is part of chapter 1, title 13 of the Mississippi Code, entitled "Evidence, Process and Juries." Section 13-1-1 states that "[a]ll provisions contained in this chapter, unless restricted by their nature or by express provision to particular courts, shall apply to and govern all courts."

¶12. Because Section 13-1-21 is an evidentiary statute, its provisions are subject to, and superceded by, provisions of the Mississippi Rules of Evidence. *See Newell v. State*, 308 So. 2d 71, 77-78 (Miss. 1975). This Court, by order dated September 24, 1985, promulgated

the Mississippi Rules of Evidence which "govern all proceedings in any action had on or after January 1, 1986." Thus, Mississippi Rule of Evidence 503 (discussed *infra*), rather than Section 13-1-21, governs the medical privilege and the issue in this case.

¶13.   However, *even if the statute were applicable*, it does not, by its very specific language, cover the information at issue,[4] and this Court has no right, prerogative, or duty to bend a statute to make it say what it does not say. No citation of authority is necessary for the proposition that courts, judges, and justices sit to apply the law as it is, not make the law as they think it should be. That said, we now proceed to carefully examine the words the Legislature chose to include in the statute in order to fairly determine whether they apply to the facts of this case.

¶14.   The only privilege established by the clear and unambiguous language of Section 13-1-21 is for "communications made to a physician . . . by a patient under his [or her] charge or by one seeking professional advice . . . ." As applied to a physician and his or her patient, no other privilege is found within the statute. Thus, if we are to be faithful to the statute, we must limit what is privileged thereunder to communications made to a physician by a patient. Put into the form of a question, is the information at issue in this case something the patient communicated in any way to the physician? Clearly not. Rather, the information at issue is the amount due by Kyle and a list of charges and procedures which are identified by code words. Since Kyle does not even allege that these code words and amounts due are

---

[4] This adequately responds to any concern that we are voiding Section 13-1-21, which we clearly are not. Justice Diaz's separate opinion confuses the majority's position. If the statute applied to the facts of this case, we would apply it.

communications she made to her doctor, the statute cannot and does not apply to the facts of this case.[5] The Legislature has not found it wise or appropriate to bring the names of medical procedures within the purview of the statute, and we shall not do it for them here.

*Mississippi Rule of Evidence 503*

¶15.    The Mississippi Rules of Evidence provide a broader physician-patient privilege than does Section 13-1-21. Rule 503(b) includes two categories of privileged information. The first is "knowledge derived by the physician . . . by virtue of his [or her] professional relationship with the patient." Miss. R. Evid. 503(b)(A). Unlike the statute, this category does not limit the privileged information to communications from the patient. Clearly, the names of tests and procedures needed by a particular patient is knowledge which the physician gains as a result of the physician's professional relationship with the patient. The second category includes "confidential communications made for the purpose of diagnosis or treatment . . . ." Miss. R. Evid. 503(b)(B). Again, this category is not limited to communications from the patient and might very well include the information at issue here. Thus, Rule 503 could certainly be interpreted to include the names and results of tests conducted by the physician and those under his or her direction. And if the names of the procedures were privileged, then a reasonable argument exists that code words and abbreviations which represent those procedures would also be privileged.

---

[5] This Court is not overruling any case which follows the statute in holding that medical records are privileged under Section 13-1-21. Unlike the symbols at issue here, medical records often contain or disclose communications from a patient to a physician, bringing them within the purview of the statute.

7

¶16. However, Rule 503(d) includes four specific exceptions to this privilege, the third of which provides that "[t]here is no privilege under this rule as to an issue of breach of duty by the physician . . . to his [or her] patient or by the patient to his [or her] physician . . . ." Miss. R. Evid. 503(d)(3). The official comment to this exception explains its scope, stating, "[u]nder the third exception *there is no privilege* when a controversy develops between physician and patient, such as in a *dispute over medical fees* or medical malpractice." Miss. R. Evid. 503(d)(3) cmt. (emphasis added). This case is unquestionably "a dispute over medical fees." Although Kyle claims there is no dispute about the amount owed, the entire basis for Franklin's "open account" claim and Kyle's counterclaim is a dispute over the collection of past due medical fees.[6] Therefore, the information included on the itemized statement attached to Franklin's complaint is not privileged under the rule.[7]

¶17. Because the itemized statement listing the AMA's CPT codes for Kyle's medical treatment and the amounts charged therefor are not covered by the physician-patient privilege, there was no violation of the physician-patient privilege by either Urology or Franklin in this case.[8] The trial court erred in denying Franklin's and Urology's motion for summary judgment on Kyle's counterclaim for breach of medical privilege.

---

[6] Disputed material facts ordinarily preclude summary judgment. However, in the context of Rule 503(d)(3), it is the presence of the dispute that mandates summary judgment.

[7] The parties' references to the Health Insurance Portability and Accountability Act of 1996 are inapposite. These federal guidelines have no relevance to the state law claims at issue, and we have no reason to consult them in our analysis.

[8] Miss. R. Civ. P. 10(d), on the form of pleadings, states that "[w]hen any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading."

## II. Whether Kyle has a cognizable claim for negligent or intentional infliction of emotional distress.

¶18.    Kyle's counterclaim asserts that the actions of Urology and Franklin in publishing the code names of her medical treatments caused her to suffer severe emotional distress; however, she cannot recover for the alleged distress for the following reasons.

¶19.    First, "there can be no recovery for mental pain and suffering from the mere negligent act of another unaccompanied by physical or bodily injury." *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981).   In responding to Franklin's summary judgment motion, Kyle submitted no affidavit or other evidence of physical injury.  As stated earlier, Kyle "may not rest upon the mere allegations or denials of [her] pleadings, but [her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Miss. R. Civ. P. 56(e).   Additionally, as previously discussed in Part I, Franklin's actions were permissible under the statutes and rules of evidence, and in response to the motion for summary judgment, Kyle presented no affidavit or other evidence of negligent conduct.   Kyle has failed to demonstrate the existence of a jury question as to her claim for negligent infliction of emotional distress, and the trial court erred in denying Franklin's and Urology's motion for summary judgment on that issue.

¶20.    Where there is no physical injury, a party may recover for intentional infliction of emotional distress, "where there is something about the defendant's conduct which evokes outrage or revulsion." *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996) (citing *Sears* 405 So. 2d at 902).   "The standard is whether the defendant's behavior is malicious,

9

intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995). *See also Smith v. Malouf*, 722 So. 2d 490, 498 (Miss. 1998) (holding "there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable by the defendant").

¶21. Kyle argues evidence of malice exists because Franklin allegedly had in its possession a non-privileged accounting but chose not to use it. We have already determined that the statement attached to Franklin's account was not privileged. Additionally, based upon Kyle's response to the summary judgment motion, and all other record evidence, no rational juror could construe Franklin's actions as outrageous or repulsive. Thus, Kyle has not presented any affidavit or evidence which establishes a jury question on her claim for intentional infliction of emotional distress, and the trial court erred in denying Franklin's and Urology's motion for summary judgment on that issue.

### III.    Whether Kyle has a cognizable claim for invasion of privacy.

¶22. Kyle also asserted that, by disclosing her medical information, Franklin and Urology were liable for the tort of invasion of privacy. In *Young v. Jackson*, 572 So. 2d 378, 382 (Miss. 1990), this Court adopted the Restatement (Second) of Torts § 652D, which covers this public disclosure of private facts, the specific privacy claim alleged by Kyle:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a)    would be highly offensive to a reasonable person, and
> (b)    is not of legitimate concern to the public.

10

¶23. In responding to Franklin's motion for summary judgment, Kyle was required by Rule 56(e) to submit sufficient affidavits or other evidence so as to establish a jury question as to each of these required elements. We find almost nothing in her response to the summary judgment motion, or elsewhere in the record, which would create a jury question as to whether the publication of the abbreviated names of the tests and procedures and their code names "would be highly offensive to a reasonable person," or whether the information "is not of legitimate concern to the public." In her response to the motion for summary judgment, the only reference Kyle makes to this claim is the statement that "Kyle has a right to privacy and medical privilege pursuant to MISS. CODE ANN § 13-1-21." We find in this case that Kyle's pleadings, read together with her response to the motion for summary judgment, will – by the barest thread – allow her to escape summary judgment on this specific cause of action.

¶24. However, we wish to make it clear that this Court intends to enforce Rule 56(e), which requires affidavits or other evidence establishing "a genuine issue for trial." Miss. R. Civ. P. 56(e). Those who practice before our trial courts are well advised to respond to summary judgment motions with affidavits, deposition testimony, responses to discovery, and other evidence approved by Rule 56, allowing our trial judges a fair look at whether triable issues of material fact exist. As the rule specifically provides, parties may not simply rely on their pleadings, nor may they escape summary judgment by outlining what they might discover later. As previously stated, Kyle has by the barest thread met this burden. Therefore, we affirm the trial court's denial of Franklin's and Urology's motion for summary judgment on the issue of invasion of privacy.

11

¶25. On rehearing, Franklin argues that compliance with Miss. Rule of Civ. P. 10(d) requires them to attach copies of the invoices to their complaint, and that allowing an invasion of privacy claim for attaching such documentation places them in a quandary. Franklin asserts that on one hand, Rule 10(d) requires them to attach the information, which could in turn lead to a suit for invasion of privacy. On the other hand, Franklin argues, this Court has found that the failure to itemize the account could be grounds for dismissal of the complaint. *See **Griffith v. Goodin***, 202 Miss. 548, 32 So. 2d 743, 744 (1947) (where failure to itemize the account resulted in a verdict in favor of the plaintiff private detective being reversed and rendered in favor of the non-paying client.). We find that under the plain language of Rule 10(d), it is clear that no such quandary exist.

Miss. Rule of Civ. Pro. 10(d) states that

When any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading *unless sufficient justification for its omission is stated in the pleading*.

(emphasis added). Franklin could have complied with Rule 10(d) and omitted the attached invoices due to their private nature. Therefore, we find no merit in Franklin's argument that compliance with Rule 10(d) subjects creditors to invasion of privacy suits.

¶26. Franklin also argues on rehearing, that Kyle's invasion of privacy claim should be barred by the privilege accorded statements made in legal pleadings. Franklin Collection asserts that Mississippi recognizes a common law litigation privilege which mandates that any publications made in a legal pleading are absolutely privileged. We find that Mississippi does not recognize a litigation privilege related to documents in a legal proceeding which invade privacy.

¶27. It is important in addressing whether the litigation privilege extends to invasion of privacy claims, to examine the litigation privilege, including its origination from the English common law. This Court first addressed the privilege in 1854, in *Lewis v. Black*, 27 Miss. 425 (1854). In addressing the privilege in an action for slander, this Court stated that "[i]n all judicial proceedings . . . the parties are permitted to speak freely; and if they should ever make use of harsh expressions, they will not be liable to an action although the same words spoken on another occasion would be actionable." (*citing Kean v. M'Laughlin*, 2 Serg. & Rawle 469 (Penn. 1816)).

¶28. In *Lewis*, this Court cited to *Kean*, a Pennsylvania Supreme Court case which dealt with an action for slander. The action arose when the defendant turned toward the plaintiff in court and shouted, "[y]ou have sworn a manifest lie." The *Kean* Court's use of the privilege was traced to Blackstone's Commentary on the laws of England. 3 Black. 125. Under a section addressing actions for *liable and slander*, Blackstone's addressed the "privilege." It stated, "[n]either are any reflecting words made use of in legal proceedings, and pertinent to the cause in hand, a sufficient cause of action for *slander*." (*citing Dyer*, 285 Cro. Jac. 90) (emphasis added). Therefore, we find that the litigation privilege at common law was only applicable to claims for defamation, such as libel and slander.

¶29. Franklin cites *Netterville v. Lear Siegler, Inc.*, 397 So. 2d 1109 (Miss. 1981) for the proposition that an *invasion of privacy* claim is also absolutely privileged in all legal proceedings. In *Netterville*, however, this Court dealt with attorney disciplinary proceedings, which were controlled by statute. We found an invasion of privacy claim to be absolutely privileged pursuant to Miss. Code Ann. Section 73-3-345, which is titled

13

"Immunity from civil suit predicated on disciplinary proceedings," and states in pertinent part:

> All complaints filed pursuant hereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted, and each person, firm any association or legal entity filing such a complaint shall be immune from civil suit predicated thereon.

Miss. Code Ann. § 73-3-345 (Rev. 2004). This Court went on to say that "[d]isciplinary proceedings against an attorney are judicial in nature and absent a statute, *under the common law*, any person involved in the proceedings, whether a party, witness, counsel, or judge is accorded absolute immunity so long as the statements made or documents filed are reasonably related to the judicial inquiry." *Netterville*, 397 So. 2d at 1112 (emphasis added). This Court then held that communication in a complaint is absolutely privileged and "[t]his immunity shall extend to any cause of action, whatever the name, be it libel and slander, *invasion of privacy*, abuse of process or other." *Id.* at 1113 (emphasis added).

¶30.   While *Netterville* dealt with attorney disciplinary proceedings, controlled by Miss. Code Ann. Section 73-3-345, this Court also stated that it was relying not only on the statute, but also the common law. *Id.* at 1112–1113. In *Netterville*, this Court, without citation of authority, in dictum implied that pursuant to the common law, the litigation privilege extended to invasion of privacy actions, when in fact it did not. Because the litigation privilege is a privilege established at common law, this Court does have within its power the option to extend it to actions for invasion of privacy and other causes of action. *See Saunders v. Alford*, 607 So. 2d 1214, 1219 (Miss. 1992) (explaining this Court's right to expand upon or abolish common law causes of action). However, because we see no

purpose in providing a privilege that adds nothing to the litigation, we decline to extend the privilege to actions for invasion of privacy. If documents which invade the privacy of another or amount to a slanderous statement about another are necessary to pursue litigation, a plaintiff may proceed unhindered by simply making reference to such documentation and seeking protection from the court before the documents are disseminated. Accordingly, we reject Franklin's argument that any publications made in a legal pleading are absolutely privileged.

## CONCLUSION

¶31. For these reasons, we affirm the trial court's denial of the motion for summary judgment on Kyle's claim of invasion of privacy, and we remand this case for further proceedings on that claim. We reverse the trial court's denial of Franklin's and Urology's motion for summary judgment on Kyle's counterclaims for violation of the medical privilege and infliction of emotional distress, and we render judgment here for Franklin and Urology on these counterclaims, finally dismissing them with prejudice.

¶32. **AFFIRMED AND REMANDED IN PART; REVERSED AND RENDERED IN PART.**

    **SMITH, C.J., WALLER AND COBB, P.JJ., AND CARLSON, J., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN THE RESULT. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ. DIAZ, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. EASLEY, J., NOT PARTICIPATING.**

    **RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶33. I concur in the majority opinion as to Issues II and III, and I concur in the result.

¶34. In Miss. Code Ann. Section 13-1-21(3) (Rev. 2002) the Legislature created a cause of action against physicians and other specifically named professionals who willfully or recklessly and wantonly violate the physician-patient privilege.[9] However, Franklin is a collection service, not a described professional provider of services to whom subsection (3) applies.[10] Accordingly, further analysis of Section 13-1-21 is unwarranted in this appeal.

¶35. The Mississippi Rules of Evidence were adopted to govern evidentiary rules, not to create causes of action. *See* Miss. R. Evid. 101-102.[11] The violation of a rule of evidence does not, standing alone, create a cause of action. Only when the act or conduct involved in failing to adhere to a rule of evidence breaches an independent, legally-protected interest or right, may a cause of action occur or accrue. Following the same logic, exceptions to the physician-patient privilege, as found in Miss. R. Evid. 503(d), are evidentiary exceptions, not

---

[9]That section states:

> [w]illful violations of the provisions of this section shall constitute a misdemeanor and shall be punishable as provided for by law. Any physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist, or chiropractor shall be *civilly liable* for damages for any willful or reckless and wanton acts or omissions constituting such violations.

Miss. Code Ann. § 13-1-21(3) (Rev. 2002) (emphasis added).

[10]Urology is not a party to this appeal. Moreover, even if they were, there is no evidence creating a genuine issue of material fact regarding "willful or reckless and wanton acts or omissions[,]" Miss. Code Ann. Section 13-1-21(3), by any of the doctors with Urology. Franklin published the contested codes.

[11]The "Order Adopting the Mississippi Rules of Evidence" specifically provides "(a) ... The Mississippi Rules of Evidence in the form attached hereto shall be, and the same hereby are adopted as *rules of evidence governing proceedings in the courts of the State of Mississippi* to the extent and with the exceptions provided in said rules . . . ." (Emphasis added). *See also* Miss. R. Evid. 1101(a) ("Except as otherwise provided by subdivision (b), these rules apply to all actions and proceedings in the courts of the State of Mississippi.").

affirmative defenses or conditions precedent to a cause of action. Just as Miss. R. Evid. 503 does not create a cause of action, 503(d) does not foreclose an independent cause of action.

¶36. The trial court properly denied the motion for summary judgment on Kyle's claim of invasion of privacy, for just as this Court has found in prior decisions, jury issues exist as to whether Franklin made unnecessary or unreasonable disclosures of confidential information. *See Robley*, 935 So. 2d at 996. A publication, oral or written, made in a legal proceeding, shall be privileged if the publication is pertinent to the cause or "reasonably related to the judicial inquiry." *See Lewis v. Black*, 27 Miss. 425 (1854) (citations omitted); *See also Netterville v. Siegler, Inc.*, 397 So. 2d 1109 (Miss. 1981).

**WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., JOIN THIS OPINION.**

**DIAZ, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶37. The majority holds that a patient may waive her physician-patient privilege by failing to timely pay her medical bill, even if the patient makes a good faith effort to settle the claim. In doing so, the majority overrules a duly enacted statute as well as nearly a century of precedent. For these reasons, I must respectfully dissent.[12]

---

[12]In footnote 3, the majority states that Ms. Kyle did not seek permission from the court in order to file a counterclaim against Urology as required under Rules 13, 14, 19, and 20. (The special concurrence also states that Urology is not a party to this appeal, but does not give its reasons.) Only Rule 14 specifically requires "authoriz[ation] by the court," however, Rule 13(I) is the applicable rule, which does not require leave of court. Rule 13(I) states, "[p]ersons other than those made parties to the original action may be made parties to a counter-claim or cross-claim in accordance with the provisions of Rules 19 and 20." Because Urology is a necessary party under Rule 19, Ms. Kyle was not required to seek leave from the court to file a countercomplaint against Urology.

Furthermore, if Ms. Kyle were amending her complaint in order to join a necessary party under Rule 19, she would have to seek leave of court pursuant to Rule 15, but only if a responsive

17

**I. Both Franklin and Urology are Liable for Breach of Ms. Kyle's Physician-Patient Privilege.**

**(A) The Majority Voids a Civil Penalty Promulgated by the Mississippi Legislature.**

¶38.    Contrary to the majority's holding, Miss. Code Ann. § 13-1-21 (Rev. 2002) is not a mere evidentiary statute that this Court has the authority to overrule. It is true that where statutes and evidence rules conflict, the court-promulgated rules will control. ***Whitehurst v. State,*** 540 So. 2d 1319, 1324 (Miss. 1989). However, Section 13-1-21 is not in conflict with Rule 503 because it is a penal statute which provides a private cause of action against a physician who has violated the physician-patient privilege. The majority ignores Subsection 3, which clearly creates civil liability:

> (3) Willful violations of the provisions of this section shall constitute a misdemeanor and shall be punishable as provided for by law. Any physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist, or chiropractor ***shall be civilly liable for damages for any willful or reckless and wanton acts or omissions constituting such violations.***

(Emphasis supplied).

¶39.    The majority's holding does not take into consideration the evolution of the statute. Two years *after* the Rules were adopted in 1986, the Legislature saw fit to amend Section 13-

---

pleading had been filed. M.R.C.P. 15 ("[o]therwise a party may amend a pleading only by leave of court or upon written consent of the adverse party.") Here, Ms. Kyle's countercomplaint was not an amendment to a complaint, but rather her first pleading on the matter. Ms. Kyle could not seek to amend a pleading, *as this was her first pleading filed with the court*. Therefore, nothing in our Rules of Civil Procedure require that she first seek leave from the trial court.

Finally, under Rules 12 and 13(a), Ms. Kyle had 30 days to file her compulsory counterclaims against both Franklin and Urology. Requiring Ms. Kyle to seek leave of court under such a deadline places a burden on a party which is not contemplated by the rules.

18

1-21 to add the statutory civil penalty. 1988 Miss. Laws ch. 557, § 3. This statutory penalty is absolutely within the Legislature's power to issue. In contrast, the penalty for violation of the Rules of Evidence is simply exclusion of the evidence. Additionally, our Legislature has repealed numerous evidentiary statutes since the adoption of the Rules of Evidence, yet it has not repealed this statute and has even added to it.[13] Therefore, the majority is not faithfully applying the law as enacted by the Legislature. The Legislature has made its intentions clear: A physician *shall be civilly liable for damages* for breach of the physician-patient privilege. Miss. Code Ann. § 13-1-21(3) (Rev. 2002). Therefore, even

---

[13]The Mississippi Legislature has repealed fifty-two evidentiary statutes since this Court's promulgation of the Rules of Evidence. Miss Code Ann. §§ 13-1-3 (repealed 1991), 13-1-7 (repealed 1991), 13-1-9 (repealed 1991), 13-1-15 (repealed 1991), 13-1-17 (repealed 1991), 13-1-79 (repealed 1991), 13-1-83 through 13-1-117 (repealed 1991), 13-1-119 (repealed 1989), 13-1-124 through 13-1-129 (repealed 1991), 13-1-133 through 13-1-147 (repealed 1991), 13-1-153 (repealed 1991), 13-1-201 (repealed 1991), 13-1-226 (repealed 1991), 13-1-228 (repealed 1991), 13-1-228 (repealed 1991), 13-1-230 through 13-1-242 (repealed 1991), and 13-1-309 (repealed 1991).

In contrast, the Legislature has amended only five evidentiary statutes, all of which are applicable outside of court proceedings and therefore are not in conflict with the Rules. Miss. Code Ann. §§ 13-1-21 (amended 1988) (medical privilege), 13-1-77 (amended 1991) (state custodian of books authorized to certify copies), 13-1-131 (amended 1991) (land-office certificates), 13-1-151 (amended 1991) (reproduction of business records, disposal of originals), and 13-1-261 (amended 1991) (judgment creditor's right to examination of judgment debtor).

The only provisions which have been added under Title 13 since the promulgation of the Rules relate to child witnesses and the medical privilege. Miss. Code Ann. §§ 13-1-401 through 13-1-415 (1986), 13-1-21.1 (eff. Jan. 1, 2007) and 13-1-22.1 (eff. July 1, 2006). The child witness provisions were added only six months after the Rules were effective, and Section 13-1-415 specifically recognizes this Court's plenary power to issues rules of evidence. ("The Mississippi Supreme Court may, by rule, provide procedures to implement Sections 13-1-401 through 13-1-415").

Finally, the very recent additions to the medical privilege laws evince the Legislature's intent to expand the medical privilege and protect Mississippi citizens from any unnecessary intrusion into their highly private and sensitive health information. Miss. Code Ann. §§ 13-1-21.1 (medical privilege considered waived by and between defendants in medical malpractice suits involving multiple defendants) and 13-1-22.1 (Supp. 2006) (certain communications made to certified peer support member by emergency responder to be privileged; definitions; exception to privilege; penalties).

if Section 13-1-21 is superceded by the Rules of Evidence for purposes of trial proceedings, it is still applicable as a basis for civil liability.

¶40. Finally, the majority's holding is in conflict with previous opinions. This Court has continued to recognize and apply Section 13-1-21 after the adoption of M.R.E. 503. In *State v. Baptist Memorial Hospital-Golden Triangle*, 726 So. 2d 554, 557 (Miss. 1998), this Court specifically stated that, "(t)he State of Mississippi recognizes the physician-patient privilege in two forms," referring to both Miss. Code Ann. § 13-1-21(1) and Miss. R. Evid. 503. *See also Jones v. State*, 858 So. 2d 139, 141 (Miss. 2003) (noting that the privilege is found in both the statute and the Rules of Evidence); *Baptist Mem'l Hospital-Union County v. Johnson*, 754 So. 2d 1165 (Miss. 2000) (applying both to determine whether the privilege applies in civil cases); *Scott ex rel. Scott v. Flynt*, 704 So. 2d 998 (Miss. 1996) (same); and *Touchstone v. Touchstone*, 682 So. 2d 374 (Miss. 1996) (applying both to determine that the physician-patient privilege does not apply to social workers).

¶41. Accordingly, the statute is applicable in the present case, and this Court has no authority to completely void what is within the Legislature's power to promulgate.

**(B) The Majority Overrules Nearly 100 Years of Case Law interpreting Miss. Code Ann. § 13-1-21 and Its Predecessors.**

¶42. By holding that the statute only covers what a patient communicates to the physician, the majority adopts an interpretation of the statute which this Court rejected nearly one hundred years ago. In *Yazoo & M.V.R. v. Messina*, this Court held that the word "communication" included not only oral statements but information obtained by physical examination as well. 109 Miss. 143, 151-52, 67 So. 963, 966 (1915), *rev'd on other grounds*

20

*sub nom. **Illinois Cent. R.R. v. Messina**,* 240 U.S. 395, 36 S. Ct. 368, 60 L. Ed. 209 (1916).

"Our statute in protecting the patient makes privileged 'all communications,' and we think it would be absurd to say that what the patient says to the physician is privileged, but what is communicated to the physician by his expert examination and exploration of his patient's body is not privileged." *Id.  See also **New Orleans & N.E.R. v. Shows**,* 240 Miss. 604, 128 So. 2d 381 (1961) (knowledge of patient's deafness a "communication").  Additionally, medical records have long been considered privileged under the statute.  In ***Metropolitan Life Insurance Company v. McSwain*,** 149 Miss. 455, 115 So. 555 (1928), this Court held that hospital records showing the results of medical examinations were covered by the statutory privilege.  This holding was repeated several decades later in ***Young v. Madison General Hospital*,** 337 So. 2d 931, 933-34 (Miss. 1976):

> Even a cursory reading of these sections makes crystal clear the careful investigation that must be made and the great caution that must be exercised before doctors and hospitals authorize the inspection and release of the medical and hospital records of patients. A release of this information to the wrong person or wrong organization could cause embarrassment to the patient, and could possibly be the subject of a lawsuit for damages. The treating doctor or hospital is under a heavy duty and responsibility to thoroughly check the credentials of the person or organization requesting access to a patient's records and to determine the specific records desired.
> . . . .
> Medical and hospital records of a patient are of a highly personal nature and as the statute says are privileged communications between the patient and his doctor or between the patient and the hospital.

¶43.  The itemized statement is a medical record, which according to this Court's longstanding case law, is covered by the statutory physician-patient privilege. The majority, however, cites no case law to support its antiquated interpretation of the statutory privilege and overrules a century of opinions by this Court.

21

**(C) Only the Patient May Waive the Physician-Patient Privilege.**

¶44.    The majority holds that Rule 503 provides the applicable standard for waiver. However, "Rule 503 . . . is a rule of evidence to be used in a hearing or at trial, and *is limited to that extent*." ***Lauderdale County Dep't of Human Servs. v. T.H.G.***, 614 So. 2d 377, 383 (Miss. 1992). Thus, the Rules of Evidence are not applicable to this case, and the correct standard for waiver is found in the statute. Section 13-1-21(4) states:

> In any action commenced or claim made after July 1, 1983, <u>against</u> a physician, hospital, hospital employee, osteopath, dentist, nurse, pharmacist, podiatrist, optometrist or chiropractor for professional services rendered or which should have been rendered, the delivery of written notice of such claim or the filing of such an action shall constitute a waiver of the medical privilege and any medical information relevant to the allegation upon which the cause of action or claim is based shall be disclosed upon the request of the defendant, or his or her counsel. (Emphasis supplied.)

Kyle made no claim against Urology before Franklin published her medical records, therefore, she had not waived her medical privilege.

¶45.    Additionally, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") guidelines allow very limited disclosure of medical information for debt collection purposes. 45 C.F.R. § 164.502(e)(1). Disclosure is restricted to the "minimum necessary" to collect the debt, and the collection agency must be on notice that it too is expected to protect the private information.[14] *Id.* The only information a medical provider

---

[14]The regulation provides, "(a) covered entity may disclose protected health information to a business associate and may allow a business associate to create or receive protected health information on its behalf, if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information." 45 C.F.R. § 164.502(e)(1)(i). In addition, "(a) covered entity must document the satisfactory assurances required by paragraph (e)(1) of this section through a written contract or other written agreement or arrangement with the business associate that meets the applicable requirements

is allowed to disclose to a consumer reporting agency under HIPAA is the debtor's name, address, date of birth, social security number, payment history, account number and name of the provider. *Id.* § 164.501. While HIPAA does not control, it provides highly persuasive evidence that a patient does not waive her medical privilege simply by failing to pay a bill.

¶46.    Even if Rule 503 were applicable, Ms. Kyle still has not waived her privilege. The majority quotes the comment to Subsection (d)(3) for the proposition that "there is no privilege when a controversy develops between physician and patient, such as in a dispute over medical fees or medical malpractice." However, *only the patient may waive the privilege*: "The privilege may be claimed by the patient . . . The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but *only on behalf of the patient*." M.R.E. 503 (c). (Emphasis supplied). "The privilege belongs to the patient, and only the patient can waive it." M.R.E. 503(c) cmt. "[T]he rules only permit the patient to waive the privilege and that to allow the treating physician to do so would deprive the patient of that very right." *Scott v. Flynt*, 704 So. 2d at 1005.

¶47.    Because Ms. Kyle made no claim against Urology before Franklin published her medical records, she had not waived her medical privilege. Franklin does not argue that Ms. Kyle disputed the amount of her bill before Franklin filed its complaint. Moreover, Ms. Kyle asserts in her brief that her attorney had been negotiating with the collection agency and that she had even signed a contract setting out a payment plan. Therefore, there could not have been a waiver under Rule 503(d)(3).

─────────────────────────

of § 164.502(e)." 45 C.F.R. § 164.502(e)(2).

¶48. Even when a patient disputes the reasonableness of the charges, the permitted disclosure is very limited. In *McCay v. Jones*, 354 So. 2d 1095, 1102 (Miss. 1978), a personal injury action in which the charges for medical treatment were at issue, the Court allowed the physicians to testify only to the reasonableness of the charges and to whether the treatment was related to the injury at issue. They were not permitted to discuss the nature of the injury in their in-court testimony. *Id.*

¶49. In this case, the nature of Ms. Kyle's treatment was made a matter of public record. However, according to the majority, any person who fails to timely pay a medical bill, even when the patient is making a good faith effort to pay, may have her highly private medical information disclosed to the public. As Ms. Kyle argued in her brief, "[t]he specific term 'cystoscopy insertion', is not generic, such as office visit, hospital visit, etc., and by saying so is about as disingenuous as using the terms 'abortion', 'penectomy', 'mastectomy', or 'hysterectomy'." Indeed, other CPT codes convey extraordinarily private information about the patient. For example:

| | |
|---|---|
| 90845 | Psychoanalysis |
| 59840-59852 | Induced abortion |
| 58260-58294 | Vaginal hysterectomy |
| 54120 | Amputation of penis; partial |
| 54660 | Insertion of testicular prosthesis |
| 55870 | Electroejaculation |
| 55970 | Intrasex surgery; male to female |

*Current Procedural Terminology: CPT / American Medical Association* (American Medical Association 1998). Under today's ruling, any person who discloses such highly private medical information in an attempt to collect an unpaid bill will be immune from liability.

24

Public policy, as well as our statutes and case law, require that we hold such persons liable for breach of the physician-patient privilege.

**(D) A Third Party May be Liable for Breach of Confidentiality.**

¶50.    Ms. Kyle alleges in her countercomplaint that Franklin also is liable for breach of her physician-patient privilege for attaching the confidential statement to its complaint.  While Section 13-1-21(3) clearly provides liability for the physician, the statute does not address whether a physician's agent may be liable.

¶51.    While a third party may not be liable for breach of the *privilege*, this Court recently held that a third party may be liable for breach of physician-patient *confidentiality*.  ***Robley v. Blue Cross/Blue Shield of Miss.***, 935 So. 2d 990 (Miss. 2006).  In ***Robley***, the plaintiff brought an action against her health insurance company for disclosing her confidential medical information.  This Court held that while there was no fiduciary relationship between the plaintiff and the insurer, it remained a question for the jury whether there was a breach of confidentiality or negligent infliction of emotional distress.  ***Id.*** at 997.  As to third party breach of physician-patient confidentiality, ***Robley*** set out a two-part test: (1) whether the disclosure occurred and, if so, (2) whether the disclosure was unnecessary and unreasonable. ***Id.*** at 996.

¶52.    In light of ***Robley***, Ms. Kyle may pursue a claim against Franklin for breach of physician-patient confidentiality.

25

## II. Infliction of Emotional Distress.

¶53.    I disagree with the majority that Ms. Kyle has not made out a prima facie case for intentional or negligent infliction of emotional distress.  First, Franklin's actions were not permissible because Ms. Kyle's medical records are privileged and highly confidential information.  Second, Franklin has not met its burden of demonstrating that no genuine issue of fact exists regarding malice.  Ms. Kyle has alleged that Franklin had in its possession a non-privileged accounting but later requested privileged medical information to attach to its "open account" complaint.  Ms. Kyle has not been given an opportunity to complete discovery; and therefore, summary judgment is premature and was properly denied by the trial court.  *See Burkhalter & Co. v. Wissner*, 602 So. 2d 835, 838 (Miss. 1992) (summary judgment premature where plaintiff was not given an adequate opportunity to complete discovery).

## III. Invasion of Privacy.

¶54.    While I agree that it was proper to deny summary judgment on the invasion of privacy claim, by finding that Ms. Kyle has "by the barest thread" met the requirements of M.R.C.P. 56(e), the majority misapplies the Rule.  The application of subsection (e) presupposes that the issue is a question of fact.  In the present case, there is no factual dispute in relation to her invasion of privacy claim.  The defendants do not deny that they attached the itemized bill to their complaint.  Indeed, it was *filed with the court*.  Therefore, whether publishing private medical information "would be highly offensive to the reasonable person," is a question of law, and Ms. Kyle is not required to submit other evidence.  *See United States v. Mendez*, 431 F.3d 420, 426 (5th Cir. 2005) ("[O]bjective reasonableness is a question of law").

26

¶55. Furthermore, I fail to see what other evidence Ms. Kyle could have submitted. Perhaps she could have found a "reasonable person" and attached a sworn affidavit from him or her to the response? Was Ms. Kyle required to use the magic words "invasion of privacy" in her affidavit? The majority provides no guidance as to what additional information Ms. Kyle could have provided.

¶56. Finally, in recognizing the highly sensitive and private nature of confidential medical information, Ms. Kyle has established a prima facie case for invasion of privacy. As this Court noted in *Robley*, "[w]e remain mindful of the *absolute sensitivity of confidential medical information* possessed by insurance companies, and the importance of protecting that information from improper disclosure." 935 So. 2d at 996 (emphasis supplied). Likewise, the medical information possessed by this collection agency was of a highly sensitive nature and therefore any dissemination "must be governed by the *strict necessities* of the situation." *Id.* (emphasis supplied).

¶57. For these reasons, I would affirm the county court's denial of summary judgment and remand this case in order for Ms. Kyle to proceed with her breach of physician-patient privilege/confidentiality, infliction of emotional distress, and invasion of privacy claims.

**GRAVES, J., JOINS THIS OPINION.**