CARLTON, J.,
for the Court.
¶ 1. This case comes before the Court from the order of the Circuit Court of Pike County granting summary judgment in favor of Statcare, PLLC (Statcare). Adrienne Thornton filed a lawsuit seeking damages. She alleged that her employment with Wal-Mart was terminated because Statcare disclosed to Wal-Mart confidential medical information concerning Thornton without her authorization. Thornton appeals the trial court’s grant of summary judgment, raising the following issues:
I. Whether the trial court erred in granting summary judgment as to her claim for violation of the physician-patient privilege under Mississippi Code Annotated section 13-1-21 and Mississippi Rule of Evidence 503.
II. Whether the trial court erred in granting summary judgment as to her claim of negligence.
III. Whether the trial court erred in granting summary judgment as to her claim for breach of contract.
¶ 2. For the reasons explained below, we find no error and affirm.
FACTS
¶ 3. Thornton was employed as a jewelry department manager at Wal-Mart in Brookhaven, Mississippi. On December 8, 2004, Thornton was fired for submitting to her supervisor, John Antoon, a request for medical leave form that contained an altered return to work date. To fully understand the circumstances surrounding Thornton’s termination, we first examine Wal-Mart’s leave of absence policy and the procedures for obtaining leave.[1]
¶ 4. Pursuant to Wal-Mart’s policy, an employee in need of time away from work for medical reasons is permitted to take a leave of absence. To accomplish this, an hourly employee (such as Thornton) must complete a “request for leave” form (“Wal-Mart form”) and submit it to his or her supervisor for approval and processing. The length of a medical leave is determined by the employee’s health-care provider, who completes the “health care provider’s certification” portion of the Wal-Mart form by recording information such as the reason(s) for the leave, the date the leave is to begin, and the date the employee may return to work. If the employee is unable to return to work on the date indicated, he or she may request an extension by repeating these procedures and submitting a second Wal-Mart form.
¶ 5. On November 20, 2004, Thornton sought treatment at Statcare complaining of headaches. She was diagnosed with tension headaches and hypertension (stress). Thornton left a Wal-Mart form with Statcare and requested that the relevant portion be completed so that she could obtain leave; she was to retrieve the Wal-Mart form within the next few days. As Thornton was leaving, Statcare provided her with one of its own forms entitled “return to work/school authorization” (“Statcare form”). This Statcare form represented that Thornton could return to work on November 29, 2004. On November 22, 2004, Thornton retrieved the Wal- *389 Mart form from Statcare and submitted it to Antoon for approval. The return to work date on the Wal-Mart form was November 29, 2004, consistent with the return to work date on the Statcare form. In due course, Wal-Mart approved Thornton’s request for leave until November 29, 2004.
¶ 6. On November 27, 2004, Thornton returned to Statcare and complained of continuing headaches. At this visit, an MRI was scheduled for November 30, 2004. Thornton left Statcare a second Wal-Mart form to be completed and picked up within the following days. Stat-care again provided Thornton a Statcare form, which stated that Thornton could return to work on December 4, 2004. A few days later, Thornton retrieved from Statcare the second Wal-Mart form and submitted it to Antoon for approval; however, this form indicated a return to work date of December 29, 2004.
¶ 7. Antoon “signed off’ on the second Wal-Mart form and gave Thornton’s request for leave packet to the personnel manager, Mary Jones, for processing. As Jones entered Thornton’s information into the computer, she noticed that the return to work date, December 29, 2004, had apparently been altered. Jones notified An-toon, who reviewed the second Wal-Mart form and agreed that the date had been altered. Antoon then called Statcare, identified himself as Thornton’s employer, and stated that he was in possession of Thornton’s second Wal-Mart form, which contained a date that was unclear. Antoon asked Statcare to fax a copy of Thornton’s second Wal-mart form from Stateare’s file. Statcare complied. Antoon received the fax and noticed that the return to work date on Thornton’s second Wal-Mart form was December 4, 2004.
¶ 8. Thereafter, Antoon confronted Thornton with the altered document and requested an explanation. Thornton claimed that she did not know why the two forms contained different return to work dates. Antoon fired Thornton, citing the discrepancy in the return to work dates as the reason for her termination.
¶ 9. Thornton filed suit against Statcare alleging numerous causes of action. Stat-care answered and later moved for summary judgment. The trial court granted Statcare’s motion for summary judgment. Aggrieved, Thornton now appeals to this Court.
STANDARD OF REVIEW
¶ 10. We review the trial court’s grant of summary judgment de novo. Moss v. Batesville Casket Co., 935 So.2d 393, 398(15) (Miss.2006) (citing Stuckey v. Provident Bank, 912 So.2d 859, 864(8) (Miss.2005)). A party is entitled to summary judgment where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The mov-ant bears the burden of demonstrating that there is no genuine issue of material fact, and the non-movant is afforded the benefit of any reasonable doubt. Moss, 935 So.2d at 398(16) (citing Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990)). A material fact is one which “tends to resolve any of the issues properly raised by the parties.” Id. (quoting Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995)).
DISCUSSION
I. Whether the trial court erred in granting summary judgment as to Thornton’s claim for violation of the physician-patient privilege under Mississippi Code Annotated section 13-1- *390 21 (Rev.2002) and Mississippi Rule of Evidence 503.
¶ 11. Thornton argues that a genuine issue of material fact exists on this issue because the second Wal-Mart form that Statcare faxed to Antoon “contained medical information regarding her ability to return to work.”
¶ 12. Under Mississippi law, the physician-patient privilege exists “only to the extent of the narrow privilege created by Section 13-1-21 of the Mississippi Code, and the broader privilege created by Rule 503 of the Mississippi Rules of Evidence.” Franklin Collection Serv., Inc. v. Kyle, 955 So.2d 284, 288(10) (Miss.2007).
A. Mississippi Code Annotated section 13-1-21 (Rev.2002)
¶ 13. Section 13-1-21(1) provides that “[a]ll communications made to a physician ... by a patient under his charge or by one seeking professional advice are hereby declared to be privileged-” Although this section is an evidentiary statute, a private cause of action is provided for under subsection (3), which states in pertinent part, that “[a]ny physician ... shall be civilly liable for damages for any willful or reckless and wanton acts or omissions constituting [a violation of the provisions of this section].” Miss.Code Ann. § 13-1-21(3). However, the Mississippi Supreme Court has recently interpreted section 13-1-21 strictly and “limit[ed] what is privileged thereunder to communications made to a physician by a patient.” Kyle, 955 So.2d at 289(14) (finding that information contained in an itemized bill that listed the charges and the names of medical procedures did not amount to “communications” so as to be privileged under section 13-1-21).
¶ 14. In the instant case, we find that the return to work date on the Wal-Mart form Statcare faxed to Antoon is not information Thornton communicated to Stat-care. Therefore, pursuant to the supreme court’s holding in Kyle, this information is not privileged under section 13-1-21.
B. Mississippi Rule of Evidence 503
¶ 15. The physician-patient privilege provided under Mississippi Rule of Evidence 503 is broader than that provided under section 13-1-21. Kyle, 955 So.2d at 289(15). While Rule 503 is a rule of evidence and does not explicitly create a cause of action, the Mississippi Supreme Court’s decision in Kyle clearly held that it does. Id. The privilege under Rule 503 is not limited to communications made to a physician by a patient. Id. Under Rule 503(b), the following is privileged:
(A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient’s family.
M.R.E. 503(b)(A) and (B). Under Rule 503, “[a] communication is ‘confidential ’ if not intended to be disclosed to third persons....” M.R.E. 503(a)(4).
¶ 16. In the instant case, the information contained in the Wal-Mart form was clearly intended to be disclosed to a third party, namely Antoon. It is undisputed that Thornton sought Statcare’s services in order to obtain medical leave. Therefore, the information contained in the Wal-Mart form is not confidential within the meaning of Rule 503(b)(B), and it is not privileged under Rule 503(b)(B).
*391 ¶ 17. It is less clear if the information contained in the Wal-Mart form is privileged within the meaning of Rule 503(b)(A) as “knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient.” This information may fall within the privilege under Rule 503(b)(A). See Kyle, 955 So.2d at 289(15) (inferring that the names of medical procedures and tests performed could fall within the privilege of Rule 503). However, we find that a determination on this point is unnecessary because Thornton waived the privilege when she provided the Wal-Mart form to Antoon. See Hopkins v. State, 799 So.2d 874, 881(14) (Miss.2001) (“it is difficult to see how Hopkins intended the medical records to remain confidential when he provided a copy of those records to the prosecutor....”).[2] Because Thornton always intended to disclose and did disclose this information to Antoon, she may not now complain that it was privileged.
¶ 18. We find that Thornton waived any claim that Statcare violated the physician-patient privilege. Therefore, we find no error in the trial judge’s decision to grant summary judgment in favor of Statcare on this claim. This issue is without merit.
II. Whether the trial court erred in granting summary judgment as to her claim of negligence.
¶ 19. In order to prevail on a claim of negligence, a plaintiff must establish “by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury.” Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1019(14) (Miss.2004).
¶ 20. The duty upon which Thornton rests her negligence claim is the physician-patient privilege, i.e., the duty not to disclose confidential medical information to third parties without authorization. In light of our previous determination that Thornton waived the physician-patient privilege, we find that Thornton’s claim of negligence must fail since there is no genuine issue of material fact as to the elements of duty or breach of duty.
¶21. Assuming for argument’s sake that Statcare did breach the duty owed to Thornton, we find that the evidence is insufficient to create a genuine issue of material fact as to whether Statcare’s conduct proximately caused Thornton’s termination. It is undisputed that Antoon fired Thornton because the second Wal-Mart form that she submitted to him contained an alteration. From the face of this form, it is obvious that the date 12-4-04 had been altered to 12-29-04.[3] The record is devoid of evidence suggesting that Stat-care may have made the alteration. The Statcare form that was provided to Thornton at her November 27, 2004, visit clearly indicates that Statcare only certified her to miss work until December 4, 2004. In her deposition, Thornton stated that she gave this Statcare form to Antoon. Thornton also admitted that she was aware that this Statcare form excused her from work only until December 4, 2004. Additionally, the MRI that was performed on Thornton on November 30, 2004, produced negative results, thereby further diluting any notion that Statcare would have extended Thornton’s return to work date.
¶ 22. We find that there exists no genuine issue of material fact as to Thornton’s *392 claim of negligence. Therefore, we find no error in the trial judge’s decision to grant summary judgment as to this claim. This issue is without merit.
III. Whether the trial court erred in granting summary judgment as to her claim for breach of contract.
¶ 23. Thornton argues that Stat-care failed to meet its initial burden of establishing that no genuine issue of material fact existed as to her breach of contract claim. She contends that Statcare’s summary judgment motion never specifically addressed her breach of contract claim.
¶ 24. The basis of Thornton’s breach of contract claim is extremely unclear. In her complaint, she alleged that “Statcare, PLLC, did injure your Plaintiff by breaching the contract between a medical provider and a patient by disclosing privileged medical information about your Plaintiff, without authorization, to [Antoon].” In her appellate brief, Thornton expresses her breach of contract claim by stating generally that (1) she was a patient of Statcare, (2) Statcare disclosed information to An-toon without authorization and in violation of Statcare’s own policies, and (3) she suffered damages as a result.
¶ 25. We find that Thornton’s breach of contract claim is nothing more than a regurgitation of her claim for violation of the physician-patient privilege. This is evident from Thornton’s complaint and appellate brief. As Statcare points out, the only basis appearing in the record upon which Thornton might argue breach of contract is Statcare’s “patient notice,” a form provided by Statcare to its patients informing them of Statcare’s obligations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). In its summary judgment motion, Statcare addressed this and argued that the return to work date is not protected health-care information within the meaning of the “patient notice.” [4] We agree and further note that a violation of HIPAA does not give rise to a private cause of action. See Acara v. Banks, 470 F.3d 569, 570-72 (5th Cir.2006).
¶ 26. We find that there is no genuine issue of material fact as to Thornton’s claim for breach of contract. Therefore, we find no error in the trial court’s decision to grant summary judgment in favor of Statcare on this claim. This issue is without merit.
CONCLUSION
¶ 27. For the foregoing reasons, we find that no genuine issue of material fact exists as to Thornton’s claims for violation of the physician-patient privilege, negligence, or breach of contract. Accordingly, we affirm the trial court’s grant of summary judgment in favor of Statcare.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.

. The policy and procedures for obtaining leave are outlined in Wal-Mart’s leave of absence packet, which is provided to its employees.

. Moreover, the only "disclosure” that Stat-care can be said to have made was the return to work date; all of the other information, which actually related to Thornton’s medical condition, was previously provided to Antoon by Thornton herself.

. A number two was crammed in front of the number four, which had been written over in such a manner that it resembled the number nine.

. The “patient notice” defines protected health-care information as:
[DJemographic and individually identifiable health information about [a patient] that will or may identify [the patient] and relates to [the patient’s] past, present, or future physical, mental health, or condition that involves providing health[-]care services or health[-]care payment.