337 So.2d 931 (1976)
Carrie YOUNG et al.
v.
MADISON GENERAL HOSPITAL et al.
No. 48790.
Supreme Court of Mississippi.
October 5, 1976.
*932 Blackmon & Smith, Canton, for appellants.
Case, Montgomery & Smith-Vaniz, Canton, for appellees.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
ROBERTSON, Justice, for the Court:
Carrie Young, Robert Smith, Lillie R. Diamond, Cammie Ricks, Eloise Nelson, and Mississippi Association for Community Health Care for the Poor, brought suit individually and on behalf of all others similarly situated, against the Madison General Hospital, Sidney Whittington, Administrator, the individual members of the Board of Directors of the Hospital, and the Madison County Board of Supervisors, in the Chancery Court of Madison County.
Complainants prayed for a permanent injunction "enjoining defendant Hospital, its agents, servants, employees and officers from further withholding information from medical records in the control and custody of said Hospital". A general demurrer was sustained to the original bill of complaint. Whereupon, complainants dismissed as to the Madison County Board of Supervisors and amended their bill of complaint. The matter was then tried on the amended bill of complaint and answer thereto. After a full hearing the chancellor dismissed the amended bill of complaint. The complainants appeal.
Complainant Carrie Young was the only former patient of the Madison General Hospital to testify. Mrs. Betty Griffin, who was in charge of the medical records at the Madison-Yazoo-Leake Family Health Center, testified for the complainants.
Mrs. Young testified that she was a new patient at the health center, and that she had been a patient on numerous occasions at the Madison General Hospital since 1968. She testified that she had five children, all of whom were delivered at the Madison General Hospital. On cross-examination Mrs. Young stated:
"Q. You indicated that you had been a patient on numerous occasions since 1968, I believe you said, at the Madison General Hospital?
A. That's right.
Q. Were those in connection with childbirth?
A. That's right. Tonsilitis, different things like that.
Q. Other than childbirth?
A. Oh, they call it pleurisy, near about the pneumonia, had my tonsils taken out. High fever. Just name it.
Q. Who was your doctor?
A. Dr. Percy Durfey, Jr.
Q. When was the last time you were in the Madison General Hospital as a patient?
A. Been quite a while now."
Complainant Young further testified that she signed a "Release of Information" form on June 13, 1974. That form recited:
"This authorizes you to release to the Medical Record Department of Madison-Yazoo-Leake County Family Health Center all information in your records concerning
Patient's Name Carrie Young... ."
*933 A second form was signed by Carrie Bell Young on October 11, 1974. That form recited:
"The following is a demand for reasonable access to information contained in the medical records of Carrie Bell Young pursuant to § 41-9-65 of the Mississippi Code 1972 Annotated.
"This is to authorize any physician, hospital, medical attendant or others to furnish Betty H. Griffin Director of the Medical Records Department of Madison-Yazoo-Leake Family Health Center, reasonable access to my medical records in your possession which have information relating to my physical condition, and treatment rendered therefor and to allow to see or copy any x-rays or records which you may have regarding my condition and treatment.

The aforesaid demanded information is needed to enable my physicians at the Madison-Yazoo-Leake Family Health Center, to; document the course of my illness and medical treatment; provide continuity of care on follow-ups; aid in the communication of my past medical treatment to my physicians at the Madison-Yazoo-Leake Family Health Center; provide data to assist in protecting my legal interest and the legal interest of the Madison-Yazoo-Leake Family Health Center and its medical staff; to serve as a reference of my past illness for my physicians at the Madison-Yazoo-Leake Family Health Center to receive and analyze my previous illness and treatment and make judgments as to the course of treatment to be followed.
"The Madison-Yazoo-Leake Family Health Center is an institution engaged in the diagnosis, treatment or care of individuals suffering from physical or mental infirmities or disorders.
"The Madison-Yazoo-Leake Family Health Center will pay for the cost of reasonable access to the medical records of the above mentioned individual." (Emphasis added).
Mrs. Griffin testified that she mailed these form releases for Mrs. Young and all of the other named complainants to the Madison General Hospital.
Three statutes cover the ownership and release of medical and hospital records on patients. Mississippi Code Annotated section 41-9-65 (1972) provides:
"Hospital records are and shall remain the property of the various hospitals, subject however to reasonable access to the information contained therein upon good cause shown by the patient, his personal representatives or heirs, his attending medical personnel and his duly authorized nominees, and upon payment of any reasonable charges for such service." (Emphasis added).
Mississippi Code Annotated section 41-9-67 (1972) styled "Hospital records not public records; privileged communications rule not impaired", provides:
"Except as otherwise provided by law, hospital records shall not constitute public records, and nothing contained in sections 41-9-61 to 41-9-83 shall be deemed to impair any privilege of confidence conferred by law on patients, their personal representatives or heirs, by section 13-1-21, Mississippi Code of 1972."
Mississippi Code Annotated section 13-1-21 (1972), styled "Communications privileged; exception", provides in part:
"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient or in case of the death of the patient at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will."
Even a cursory reading of these sections makes crystal clear the careful investigation *934 that must be made and the great caution that must be exercised before doctors and hospitals authorize the inspection and release of the medical and hospital records of patients. A release of this information to the wrong person or wrong organization could cause embarrassment to the patient, and could possibly be the subject of a lawsuit for damages. The treating doctor or hospital is under a heavy duty and responsibility to thoroughly check the credentials of the person or organization requesting access to a patient's records and to determine the specific records desired.
In the case at bar, all so-called requests for records were mailed to the Madison General Hospital by the Medical Records Department of the Family Health Center. This center did not come into being until January, 1974, and as of July 2, 1974, had enrolled 1227 families and 3470 individuals in its health services program. Every request for reasonable access to a patient's records was handled by mail. At no time did Mrs. Betty Griffin or Dr. William Truly, medical director of the center, personally appear at the Madison General Hospital and ask for reasonable access to any patient's records.
In the case of Mrs. Young, who was the only former patient of the Madison General Hospital to testify, no indication was made by Mrs. Young, Dr. Truly or Mrs. Griffin of what particular records the treating doctor needed to see or what records they needed copies of, even though Mrs. Young had been a patient there many times over a considerable span of years and had been treated for illnesses and disabilities running the gamut from normal childbirth to pleurisy and pneumonia.
Medical and hospital records of a patient are of a highly personal nature and as the statute says are privileged communications between the patient and his doctor or between the patient and the hospital. That is the reason the statute limits the patient, his or her attending medical personnel, and his or her duly authorized nominees "to reasonable access to the information contained therein upon good cause shown ... and upon payment of any reasonable charges for such service."
Medical and hospital records being highly personal in nature, reasonable access to them cannot be the subject of a class action suit.
The question could be logically asked as to just exactly what was expected of the hospital when it received the form through the mail requesting "reasonable access to information contained in the medical records of Carrie Bell Young". Was the hospital expected to promptly reproduce and send to the medical records department of the family health center all medical and hospital records of Carrie Bell Young from 1968 through October 1974? Was the health center willing to pay for these voluminous records?
We construe the form request signed by Carrie Bell Young on October 11, 1974, to require the Madison General Hospital to provide Mrs. Betty Griffin or Dr. William Truly reasonable access to the medical and hospital records of Mrs. Young when Mrs. Griffin or Dr. Truly appeared personally at the Madison General Hospital and personally requested reasonable access.
After carefully checking these hospital records at the Madison General Hospital, Mrs. Griffin or Dr. Truly should designate which of the records the center would need, and for which the center would be willing to pay for producing copies.
The appellants not having complied with the requirements of Mississippi Code Annotated sections 41-9-65 and 13-1-21 (1972), the chancellor was correct in dismissing the original and amended bills of complaint, and his decree so doing is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.