ISHEE, J,
for the Court.
¶ 1. The Appellant, Dr. Cheryl Robley, filed suit against Blue Cross/Blue Shield of Mississippi (“Blue Cross”) claiming damages for failure by Blue Cross to maintain their duty of confidentiality of medical information in their possession relating to Dr. Robley. The Circuit Court of Harrison County granted a directed verdict in favor of Blue Cross pursuant to Rule 50(a) of the Mississippi Rules of Civil Procedure, dismissing the complaint filed by Robley. From this decision Dr. Robley timely appeals.
FACTS
¶ 2. Dr. Robley was a successful clinical psychologist in Tennessee for several years prior to moving to Mississippi. During the 1980’s, Dr. Robley began to suffer severe status migraine headaches. Despite consulting numerous physicians and trying numerous treatment regimens, the headaches were persistent and disabling, and Robley was forced to close her practice. Since October 8, 1997, she has been under the primary care of a doctor in New Orleans. Frequently, Dr. Robley has been prescribed narcotic medications for the treatment of the pain associated with her headaches.
¶ 3. Blue Cross is the provider of group health and medical insurance benefits to the employees of William Carey College. Dr. Robley’s husband, Franklin T. Johnson, was employed at the Gulf Coast campus of William Carey College. Through the policy issued to the employees of the college, Mr. Johnson was able to insure his wife, son, and his daughter, Kelly Johnson. Periodically, medical records relating to Dr. Robley’s treatment for migraine headaches, including medication records, hospital records, pharmacy records and physician’s records, were submitted to Blue Cross with claims for payment of medical expenses and prescription drug charges incurred in the course of her treatment. Blue Cross also obtained information by correspondence and telephone from Dr. Robley’s various other health care providers. Some of the records obtained by Blue Cross referred to Dr. Robley’s use of narcotic medications.
¶4. Sandra McFarland, R.N., worked for Blue Cross as a ease manager. McFarland was assigned all persons covered by the William Carey group plan. As such, McFarland managed any claims filed by Dr. Robley or her daughter Kelly. In February of 1997, Kelly was hospitalized several times at Gulf Coast Community Hospital and its affiliated Wound Care Center in Biloxi. Kelly was being treated for several severe deep abscesses. On March 14, 1997, Kelly was being treated by Dr. Dennis Smith, a general surgeon, who was incising and draining one or more large abscesses which had become infected. Because of Dr. Robley’s history of debilitating migraine headaches and Mr. Johnson’s concern that he could not properly care for Kelly’s wounds, the staff at the Wound Care Center sought approval from Blue Cross for in home visits by a home health care nurse who would dress the wounds.
¶ 5. Paula Mason, a registered nurse employed by the Wound Care Center, was the employee who called Blue Cross seeking approval. The disputed conversation between Blue Cross employee McFarland and nurse Paula Mason, and the incident’s subsequent effects on Dr. Robley, became the subject of this controversy. Mason *1023 testified at trial that McFarland was familiar with the family, but reticent to agree to provide in home care, and that McFarland had called Dr. Robley “a drug seeker.” McFarland and Blue Cross deny ever using that term. Mason then relayed McFarland’s alleged comment to Dr. Rob-ley and her family. Dr. Robley alleges that hearing the comment caused her to enter a psychotic state, which aggravated her pre-existing migraines and left her bedridden for several days. Dr. Robley further alleges that since the incident she has frequently become enraged, violent, and suffers bouts of crying over minor incidents that previously would not have affected her.
¶ 6. On January 29, 1999, Dr. Robley filed suit against Blue Cross in the Circuit Court for the Second Judicial District of Harrison County. The complaint sought to recover damages for both intentional and negligent infliction of emotional distress and for breach of contract for the release of confidential medical information. Blue Cross filed an answer denying the allegations of the complaint on March 17, 1999, stating that Blue Cross acted reasonably in good faith with respect to their contractual obligations under the subject policy. Blue Cross filed an amended answer on November 19, 2001, adding the statute of limitations and failure to join a necessary party and/or indispensable parties as affirmative defenses.
¶ 7. After the completion of discovery, Blue Cross filed a motion for partial summary judgment to dismiss the claims of intentional infliction of emotional distress, which was granted. On October 11, 2002, Blue Cross filed a motion for summary judgment seeking dismissal of all remaining claims. That motion was overruled by order of the trial court on June 8, 2003. The case proceeded to trial before jury on August 19, 2003. After the presentation of the plaintiffs evidence, Blue Cross presented a motion to dismiss pursuant to Rule 50(a) of the Mississippi Rules of Civil Procedure. The trial court granted the motion, holding that there was insufficient evidence of a breach of confidentiality and insufficient evidence to support an award of damages for breach of confidentiality. The trial court entered its final judgment in favor of Blue Cross on September 8, 2003. Aggrieved by this decision, Dr. Robley asserts the following errors on appeal: (1) whether a sufficient jury question was presented as to whether Blue Cross breached its fiduciary duty of confidentiality to allow Dr. Robley to survive Rule 50 judgment, and (2) whether there was sufficient evidence to present an issue to the jury that Dr. Robley suffered from injuries that were causally related to the release of the confidential information by Blue Cross.
ISSUES AND ANALYSIS
I. Whether a sufficient jury question was presented as to whether Blue Cross breached its fiduciary duty of confidentiality to allow Robley to survive Rule 50 judgment.
¶ 8. Motions for review of motions for a directed verdict are reviewed de novo. Entergy Mississippi, Inc. v. Bolden, 854 So.2d 1051, 1054(¶ 7) (Miss.2003) (citing Pace v. Financial Sec. Life of Mississippi, 608 So.2d 1135, 1138 (Miss.1992)). This Court must decide whether the facts presented by both parties with any reasonable inferences to be considered in the light most favorable to Dr. Robley, and disregarding any evidence of Blue Cross in conflict therewith, point so overwhelmingly in favor of Blue Cross that reasonable jurors could not have returned a verdict for Dr. Robley. Drennan v. The Kroger Co., 672 So.2d 1168, 1170 (Miss.1996) (quoting Litton Systems, Inc. v. Enochs, 449 So.2d 1213, 1215 (Miss.1984)).
*1024 ¶ 9. Dr. Robley argues on appeal that the trial court erred in interpreting the Blue Cross subscriber’s agreement to allow Blue Cross to disclose confidential information to third parties at Blue Cross’s sole discretion. Dr. Robley asserts that the trial court also erred when it opined that because Ms. Mason was calling Blue Cross to discuss treatment for Dr. Rob-ley’s daughter, the disclosure of Dr. Rob-ley’s medical information was authorized by the familial nature of their relationship under paragraph N.l of the subscriber’s contract.
¶ 10. Dr. Robley’s argument is two-fold. First, Dr. Robley asserts that Blue Cross had contractually created fiduciary duty of non-disclosure. Second, Dr. Robley argues that the subscriber’s agreement did not authorize disclosure of Dr. Robley’s medical information. We shall discuss these issues separately, first turning toward whether Blue Cross owed Dr. Robley any fiduciary duty. In determining whether a fiduciary duty existed, we must examine the language of the subscriber’s agreement. Article XVII, paragraph N.l states in its entirety that:
Each Member receiving care under the Benefit Plan authorized and directs any Provider to furnish to Company, at any time upon its request, all information, records, copies of records or testimony relating to attendance, diagnosis, examination, or treatment. Such an authorization and compliance therewith by each Provider affected will be a condition precedent to rights to Benefits to each Member hereunder, and no Benefits will be provided in any case where such authorization is not given full effect. Company will utilize the information described in this paragraph for internal administration of the benefit Plan, medical analysis, coordination of benefit provisions with other plans, subrogation of claims, or in the reviewing of a disputed claim. Additionally, Company will hold such information, records, or copies of records, as confidential except where in its discretion the same should be disclosed.
Blue Cross argues that the language of paragraph N.l allows it the discretion to use medical information for internal utilization review, and that in doing so it is granted the right to disclose the information to outside medical providers if necessary for them to complete their review. Blue Cross exerts that its duties were not fiduciary in nature, but were merely contractual. In short, Blue Cross argues that the disclosure of Dr. Robley’s personal medical information was permissible under the terms of the contract, even when the disclosure was made pursuant to a discussion regarding the care of a third party, in this instance Dr. Robley’s daughter.
¶ 11. We begin by recognizing that the general rule regarding first-party insurance contracts is that such contracts are an arm’s length transaction between two parties which does not create fiduciary obligation. Estate of Jackson v. Mississippi Life Ins. Co., 755 So.2d 15, 24(¶ 36) (Miss.Ct.App.1999). Dr. Robley asserts that the terms of the subscribers agreement expressly create a duty of confidentiality that became fiduciary in nature through the contract. Dr. Robley relies upon Lowery v. Guaranty Bank and Trust Co., for the proposition that the term “fiduciary relationship” is broad enough to include a confidential relationship, and that such a confidential relationship may be established through the terms of an insurance contract. Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 83-85 (Miss.1991). While Dr. Robley admits that the facts of Lowery indicate that the contract in question was a credit life insurance policy, she argues that the proposition should apply to all contracts.
*1025 ¶ 12. We find that the provisions of the subscriber’s agreement created a fiduciary relationship between Blue Cross and Dr. Robley that required Blue Cross to evince a high degree of care as to the dissemination of Dr. Robley’s medical information. The Supreme Court of Mississippi has long recognized that “[a] release of this information to the wrong person or wrong organization could cause embarrassment to the patient, and could possibly be the subject of a lawsuit for damages.” Young v. Madison General Hospital, 337 So.2d 931, 934 (Miss.1976).
¶ 13. We next turn to the issue of whether the subscriber’s agreement allowed the disclosure of Dr. Robley’s medical information under the factual circumstances created by her daughter’s illness. Blue Cross asserts that the subscriber’s agreement allowed them to disclose Dr. Robleys’s medical information according to its own absolute discretion. Furthermore, the trial court held that the release of Dr. Robley’s information in the context of daughter Kelly’s illness could not be deemed a release to a third party. We can find no basis for the trial court’s holding based upon the plain language of the agreement. We note that there is scant support from the agreement to conclusively hold that the disclosure was specifically barred as well. We conclude that the issue of the propriety of the disclosure was simply not suitable for directed verdict. The testimony at trial was mixed in this regard, and taking all evidence in the light most favorable to Dr. Robley, we must hold that the trial court erred by granting Blue Cross’s motion for directed verdict. The issue of whether Mrs. McFarland, as an employee of Blue Cross, breached the duty of confidentiality requires a weighing of the testimony presented at trial, a task which falls within the province of the jury. We hereby reverse the judgment of the trial court.
II. Whether there was sufficient evidence to present to the jury that Dr. Robley suffered from injuries that were causally related to the release of the confidential information by Blue Cross.
¶ 14. Dr. Robley argues on appeal that if it is found that Blue Cross did indeed breach its fiduciary duty of confidentiality, then Dr. Robley may pursue damages for intentional emotional distress. In turn, Blue Cross asserts that no fiduciary duty was owed, and as such no claim for emotional distress may be made by Dr. Robley as such a claim is not allowed under contract. As discussed supra, we hold that Blue Cross did owe such a fiduciary duty to Dr. Robley. Again, we reiterate that a jury could have found that the duty was breached, thus rendering directed verdict improper. However, assuming arguendo that no fiduciary duty was owed to Dr. Robley by Blue Cross, a plaintiff may assert a claim for mental anguish and emotional distress under a breach of contract claim. University of Southern Mississippi v. Williams, 891 So.2d 160, 172(¶ 30) (Miss.2004). Blue Cross further argues that any of Dr. Robley’s alleged injuries were not the reasonably foreseeable result of any breach of duty that may have occurred. Blue Cross’s contention as to the foreseeability of Dr. Robley’s injuries is untenable. The Mississippi Supreme Court has held that the disclosure of sensitive medical information about a person, even if true, constitutes an actual wrong and that it is not unreasonable to foresee that a person would be injured by the release of such information. Young, 337 So.2d at 933-34. Taken in the light most favorable to Dr. Robley, sufficient proof of her alleged injuries was presented at trial to present a jury question. We *1026 hold that sufficient evidence existed at trial of a causal connection between the release of Dr. Robley’s confidential information and her alleged injuries to allow her cause to survive Blue Cross’s motion for directed verdict. We therefore reverse the judgment of the trial court as to this issue.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, AND BARNES, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., NOT PARTICIPATING.