United States Court of Appeals,

Fifth Circuit.

Nos. 93-1625, 93-1850.

Terri Day SIMS, Individually and as Next Friend of Shaleen Day, Plaintiff-Appellant,

v.

ANR FREIGHT SYSTEM, INC. and Robert W. Hembling, Defendants-Appellants.

March 14, 1996.

Appeals from the United States District Court for the Northern District of Texas.

Before DAVIS and PARKER, Circuit Judges, and BUNTON[1], District Judge.

ROBERT M. PARKER, Circuit Judge:

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Terri Day Sims was employed with Defendant ANR Freight System, Inc. as a sales representative at ANR's Fort Worth office. Shaleen Day is Sims' daughter. Defendant Robert W. Hembling was the terminal manager of ANR's Fort Worth office. On August 26, 1987, Sims' employment with ANR was terminated.

Sims filed suit on November 25, 1991, asserting claims of sexual harassment and retaliatory discharge against ANR and Hembling under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Sims also filed claims for assault and intentional infliction of emotional distress against ANR and Hembling under Texas common law as next friend for her minor daughter Day.

The district court granted ANR's motion for partial summary judgment with respect to Day's tort claims on the basis that the alleged conduct by Hembling was outside the scope of his employment with ANR. The district court also granted motions for separate trials for the remaining tort claims against Hembling and the Title VII claims against ANR. In the former, the jury returned a verdict in favor of Hembling. In the latter, the district court ruled for ANR.

Prior to the trials, all parties agreed on an estimate that the cases would require 5 to 7 days total to try. Nevertheless, the district court gave the parties only 1 day for each trial. Furthermore,

[1]District Judge of the Western District of Texas, sitting by designation.

the district court imposed strict time limits on each party:  5 minutes each for opening statements, 2 hours for Plaintiff's case in chief, 2.5 hours for Defendant's case, and .5 hour for Plaintiff's rebuttal (5 hours of testimony for each case).  The district court granted extra time over these limits in the bench trial but still forced the parties to complete each of the trials in less than a day, far less than half the time any of the parties estimated was necessary for a fair trial.

The district court required the parties to submit extremely detailed statements as to the facts they intended to prove at trial.  For the jury trial on the tort claims, Sims identified 640 facts to be proven through 18 witnesses;  Hembling listed 577 facts to be proven through 4 witnesses.  In the bench trial on the Title VII claims, Sims specified 1510 facts to be proved through 27 witnesses;  ANR named 318 facts to be proven through as many as 23 witnesses.  The district court then refused to allow the parties to introduce any evidence as to the uncontested issues, including background facts such as the witnesses' work experience and education.  The district court later denied a request to read certain stipulated facts to the jury, and the record is not clear how many or which ones were actually read to the jury.

The district court ordered Sims to call her witnesses in a specific order.  Throughout both trials, the district court repeatedly limited both direct and cross examination, frequently ordering counsel to "move on," and continually reminded counsel of the time limits.

Sims appeals from the district court's final judgments in both cases, as well as the partial summary judgment in favor of ANR on the tort claims.  The two appeals were consolidated.

## II. ANALYSIS

1. *District Court's Conduct* :

Viewed as a whole, Plaintiff's claims are a charge that the methodology utilized by the district judge in this case so impaired counsel's ability to present evidence to the jury in a meaningful and comprehensible manner that it amounted to structural error.  Or, to say it another way, Plaintiff in effect was denied a trial.

We do not review such a claim in a vacuum.  We are mindful of the fact that Judge McBryde when he assumed office took over a docket that was both crowded and filled with cases that had been

pending far too long. He is to be commended for the fact that he, through hard work and effective case management, reduced the docket to one of the lowest in the district. We have long encouraged trial judges to actively manage both their dockets and the trials they conduct.

The role of a federal judge is not that of a mere moderator. *Posey v. United States,* 416 F.2d 545, 555 (5th Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Furthermore, the courts of this country labor under heavy caseloads, and in order to accommodate these caseloads some concessions to expediency are necessary. However, if the goal of expediency is given higher priority than the pursuit of justice, then the bench and the bar both will have failed in their duty to uphold the Constitution and the underlying principles upon which our profession is founded. Speed is necessary, and the limited capabilities of the judicial system certainly should be considered in determining whether to impose limits on the introduction of evidence and the length of trial. However, such considerations must be addressed with a cautious respect for the requirements necessary to achieve a fair trial.

We recognize that a district judge has broad discretion in managing his docket, including trial procedure and the conduct of trial. *Topalian v. Ehrman,* 954 F.2d 1125, 1139 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Furthermore, although a trial judge must be neutral, he should not be a passive spectator. *Ruiz v. Estelle,* 679 F.2d 1115, 1129, *modified,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). When in his sound discretion he deems it advisable, a judge may comment on evidence, question witnesses, elicit facts not yet adduced, or clarify those previously presented. *Id.* He may maintain the pace of the trial by interrupting or setting time limits on counsel. *Id.* However, discretion has its limits. *See Kelly v. Boeing Petroleum Serv., Inc.,* 61 F.3d 350, 358 (5th Cir.1995).

The very procedures complained about here—that the parties were required to enter stipulated facts, that the judge did not permit lawyers to refer to stipulated facts, that the judge actively managed the trial, that he expedited the presentation and questioned witnesses—are all procedures that we view as tools that well serve our system of dispute resolution. We, therefore, are required to examine this record with a view of whether the parties were offered too much of a good

thing; or to put it in more traditional language, whether the cumulative effect of the procedures utilized by Judge McBryde constituted an abuse of the broad discretion afforded judges in managing their dockets, including trial procedures and the conduct of the trial itself. *Topalian,* 954 F.2d at 1139.

A trial is a proceeding designed to be a search for the truth. *See Nix v. Whiteside,* 475 U.S. 157, 158, 106 S.Ct. 988, 989-90, 89 L.Ed.2d 123 (1986). The rules that have evolved over time that govern how trials are conducted in our society were conceived to aid the participants in performing their role in this search for the truth. Essential to the endeavor is an opportunity for the parties through their lawyers to present information in a manner that is comprehensible to a judge or jury. In this respect, the role played by lawyers in a trial is paramount. When the manner of the presentation of information to a jury is judicially restricted to the extent that the information becomes incomprehensible then the essence of the trial itself has been destroyed.

In the jury trial, we are persuaded that the methodology imposed on this trial by the court and the restrictions that were placed on the lawyers regarding the manner of the presentation of evidence adversely impacted on the comprehensibility of the evidence to the point that Sims was denied a trial. Having reached such a conclusion we would ordinarily simply reverse the error and remand the case for a new trial.

This case, however, may not be disposed of so readily. A remand would raise the expectation level of Plaintiff and impose on Defendant the cost of another trial, neither of which are justified when the evidence as a whole is examined. The evidence is so overwhelming against Sims that there is no reasonable possibility that the outcome would be different if the case were re-tried, even if Sims were allowed to present fully all her evidence in a comprehensible manner. *See Joshi v. Florida State Univ. Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.) (holding that, even in face of error which would ordinarily require remand, no remand was warranted when fact finder could not reach different conclusion), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985). We therefore are not persuaded that the interests of justice require a reversal of the error present in this case. The judgment is therefore AFFIRMED.

As to the bench trial, a judge in a non-jury trial, by virtue of his experience and knowledge of the case long before trial, is better able to comprehend the presentation of evidence. Because of the lengthy pre-trial history of this case, it is clear that Judge McBryde was familiar with the issues and evidence. He did not require the same structured presentation of evidence that the jury did. Therefore, we find no reversible error in the trial procedures, and the merits of the district court's legal findings are supported by the record. Consequently, the judgment in the bench trial is AFFIRMED.

We note, however, that even in the non-jury context, credibility choices play an important role. There is a benefit for the judge to permit lawyers a fair opportunity to present their evidence in the light most favorable to their claim. Unduly restrictive procedures can have a negative impact on the quality of a trial, whether it be a jury trial or a bench trial. Though the procedures that were the basis of this appeal did not result in a reversal of the judgments, we trust that the district court will reevaluate the restrictions on the lawyers' ability to present facts in a comprehensible manner so that reversal in other cases, and the resulting expenses to litigants, might be avoided.

2. *Partial Summary Judgment for ANR* :

Because we affirm the jury verdict that no tort occurred, the question of ANR's vicarious liability is moot.

The final judgments are therefore AFFIRMED.