# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2021

Lyle W. Cayce
Clerk

No. 17-60856

DENISE TAYLOR-TRAVIS,

        Plaintiff–Appellee Cross-Appellant,

v.

JACKSON STATE UNIVERSITY,

        Defendant–Appellant Cross-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:12-CV-51

Before OWEN, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:

Denise Taylor-Travis sued Jackson State University after the university terminated her employment. She alleged violations of Title VII of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, and she brought state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and invasion of privacy. A jury awarded Taylor $182,000 for her breach of contract claim but found no liability on her claim for breach of the implied covenant of good faith and fair dealing and found no violations of Title VII or Title IX. The district court found in favor of Taylor on her invasion of privacy claim and awarded her $200,000. Jackson State

No. 17-60856

appeals the breach of contract and privacy awards, and Taylor appeals the Title IX retaliation verdict, contending the jury instructions were infirm. We affirm the district court's judgment as to the breach of contract and Title IX claims and reverse as to the privacy claim.

## I

Jackson State University hired Denise Taylor-Travis as the head coach of the women's basketball team in 2001. Her employment agreement was subsequently extended through 2013. In March 2011, several members of Taylor's team began complaining about mistreatment by Taylor. The team specifically mentioned the following conduct:

1. having student–athletes sign blank meal vouchers;
2. telling student–athletes that their meal money is based on their performance during games;
3. verbally abusing student–athletes;
4. removing student–athletes from the team's travel list to provide her husband and son airline tickets;
5. questioning student–athletes about their sexual orientation and the sexual orientation of their teammates;
6. leaving one student–athlete in the parking lot and another in the athletic training room of the host institution while on travel in another city;
7. sharing a personal and confidential conversation with one student–athlete with other student–athletes;
8. limiting a student–athlete's playing time because the student–athlete would not change her schedule to accommodate the team's scheduled practice time; and
9. drinking alcohol while away on travel with the team.

After Jackson State President Carolyn Meyers was informed of the complaints against Taylor, she requested that the university's internal auditor investigate. Taylor was placed on administrative leave with pay pending the outcome of Jackson State's investigation. Jackson State's internal auditor found that Taylor violated the Athletic Department's Policies and Procedure Manual on multiple occasions by misallocating and misusing university funds.

In sum, the auditor concluded that Taylor owed Jackson State $4,544.44 for misappropriating university funds.

Following the completion of the audit, Jackson State sent Taylor a notice of intent to terminate her employment for cause. A few days later, Taylor's counsel responded with a letter requesting arbitration. Taylor's employment was officially terminated on June 29, 2011. At that time, Taylor had two years and $182,000 remaining on her contract. Jackson State sent another letter the next day, contending that the arbitration provision in Taylor's employment contract was unenforceable.

Before Taylor's employment was officially terminated, a local newspaper, *The Clarion-Ledger*, sent Jackson State a public records request seeking information regarding communications between the university and Taylor. Jackson State withheld numerous documents as privileged under Mississippi law, but ultimately provided the newspaper with nine pages of information regarding Taylor. Three days later, *The Clarion-Ledger* posted on its online blog that Jackson State had terminated Taylor's employment for several reasons, including sexual gender stereotyping, verbal abuse, and misappropriation of university funds.

Taylor sued Jackson State, claiming: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) invasion of privacy; and (4) sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. Each of the claims except for invasion of privacy were tried before a jury. After a six-week trial, the jury returned a verdict (1) awarding Taylor $182,000 on her breach of contract claim; (2) awarding Taylor $0 on her claim for breach of an implied covenant of good faith and fair dealing; and (3) finding for Jackson State on the Title VII and Title IX claims. As for the invasion of privacy claim, the district

No. 17-60856

court found that Jackson State was liable and awarded Taylor $200,000 in damages.[1]

After the district court entered final judgment, Jackson State filed a motion for judgment as a matter of law or, in the alternative, for a new trial or a remittitur of damages on the breach of contract and invasion of privacy claims. Taylor then filed a motion for new trial regarding her Title IX retaliation claim, contending that the district court improperly instructed the jury on causation. The district court denied both motions.[2] Both parties appeal.

## II

Jackson State asks the court to reverse and render judgment in its favor on Taylor's breach of contract claim, or, alternatively, to order a new trial of that claim before a different district judge.

## A

Jackson State argues that Taylor's breach of contract claim fails because Taylor never showed that Jackson State breached Taylor's employment contract. We review a grant or denial of a motion for judgment as a matter of law de novo.[3] "Judgment as a matter of law is appropriate if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue.'"[4] "Reviewing all of the evidence in the record, a 'court must draw all reasonable inferences in favor of the nonmoving party, and it may not make

---

[1] *Taylor-Travis v. Jackson State Univ.*, No. 3:12-CV-51-HTW-LRA, 2014 WL 12779207, at *10 (S.D. Miss. Aug. 1, 2014).

[2] *Taylor-Travis v. Jackson State Univ.*, No. 3:12-CV-51-HTW-LRA, 2017 WL 6604567, at *20 (S.D. Miss. Dec. 22, 2017).

[3] *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002) (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 356 (5th Cir. 2000)).

[4] *Id.* (alterations in original) (citation omitted); *see also* FED. R. CIV. P. 50(a)(1) (stating that a court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

credibility determinations or weigh the evidence.'"[5]    "[T]he court 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'"[6]

Taylor's claim for breach of contract hinges on her contention that Jackson State lacked cause to terminate her employment.  Under the terms of Taylor's contract, if Jackson State terminated Taylor without cause, it was required to pay her "the remaining amount owed to [her] under" the contract. Conversely, if Jackson State terminated Taylor for cause, Jackson State was "obligated to pay [her] all amounts owing *up to the date of termination only*." Taylor contends that Jackson State breached its contract with her by terminating her without cause and not paying her the entire amount owed under the contract.

The contract defined "cause" as:

(i)    deliberate, serious and willful violations of Head Coach's duties defined in the Agreement or refusal or unwillingness to perform such duties in good faith; or

(ii)    any conduct of Head Coach in violation of an applicable criminal statute; or

(iii)    knowingly committing or condoning a major violation or a pattern of uncorrected secondary violations of NCAA rules and/or conference rules.

The contract also provided that "involvement in a deliberate and serious violation of any law, regulation, rule, by-law, policy or constitutional provision of the State of Mississippi, the Board, the NCAA, conference or any other governing authority may result in suspension without pay and/or termination of this contract."

---

[5] *Industrias*, 293 F.3d at 918 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[6] *Id.* (quoting *Reeves*, 530 U.S. at 151).

Jackson State argues that the undisputed evidence establishes that Taylor engaged in conduct that gave Jackson State cause to fire her, including misappropriating funds in violation of the school's travel and reimbursement policies and mistreating student–athletes. We disagree.

The evidence regarding player mistreatment conflicted. Taylor testified that she did not mistreat her players and that any allegation to the contrary was "absolutely false." Taylor specifically stated that she has "no problem with what [a student–athlete's] sexual preference is," that she recruited many players knowing their "alternative lifestyle," and that she has "absolutely not . . . ever treated a player that lived the alternative lifestyle any different." The record contains evidence contradicting Taylor's testimony. However, Taylor's testimony provides legally sufficient evidence for the jury's conclusion that Taylor did not mistreat her players in a manner that gave Jackson State cause to fire her.

Likewise, the jury's determination that Jackson State did not have cause to terminate Taylor for misappropriating funds was based on legally sufficient evidence. Even if the evidence showed that Taylor misappropriated funds, doing so only gave Jackson State cause to fire her if the misappropriations amounted to "deliberate, serious and willful violations of [Taylor's] duties defined in the Agreement or refusal or unwillingness to perform such duties in good faith." Taylor presented evidence that she engaged in the complained of fund-management activities pursuant to the instructions of Jackson State's business manager, that she had previously engaged in the same activities without objection from the university, and that male coaches engaged in the same activities without reprimand. Drawing all reasonable inferences in favor of Taylor, the jury had sufficient evidence to conclude that any policy violation was not "deliberate, serious and willful" and that Taylor performed her duties "in good faith." A reasonable jury could have concluded that Taylor's

No. 17-60856

management of funds did not give Jackson State cause to terminate her employment.

## B

Jackson State argues that, at a minimum, it should be granted a new trial on Taylor's breach of contract claim. Jackson State argues that the district court erroneously excluded a proposed jury instruction and abused its discretion in its overall handling of the case.

## 1

Jackson State proposed the following jury instruction: "In deciding whether Jackson State was justified in its decision to terminate Plaintiff, you may not consider Plaintiff's length of employment or Jackson State's failure to discover Plaintiff's misconduct sooner. You also must not consider whether Jackson State has tolerated similar misconduct by other employees."

This court reviews a refusal to provide a requested jury instruction for abuse of discretion.[7] "[T]he district court's refusal to give a requested jury instruction constitutes reversible error 'only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim].'"[8]

The district court did not abuse its discretion by refusing to give Jackson State's proposed instruction because it was not a substantially correct statement of law. Jackson State argues that a 1990 Mississippi Supreme Court case, *Hoffman v. Board of Trustees, Eastern Mississippi Junior College*,

---

[7] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004) (quoting *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001)).

[8] *Id.* (second and third alteration in original) (quoting *McClatchy*, 249 F.3d at 356).

supports its instruction.[9]  In *Hoffman*, the Mississippi Supreme Court stated that the issue before the court was whether Hoffman breached his contract, not "whether [Hoffman's] employer has failed to act upon similar past deficiencies."[10]  But here, unlike in *Hoffman*,[11] the question of breach implicates Jackson State's past handling of similar situations because the jury had to decide whether  Taylor performed her duties in good faith and whether any violations she committed were deliberate, serious, and willful.  Thus, *Hoffman* is not on point.  The district court did not abuse its discretion in declining to give Jackson State's proposed instruction.

## 2

Jackson State argues that the district court's overall conduct in this case justifies a new trial on the breach of contract claim, or, if the panel remands, transfer to a different judge.  Jackson State contends that the district court abused its discretion by allowing the arbitration provision in Taylor's contract to become an issue at trial and by questioning witnesses in a manner that suggested partiality toward Taylor.

The district court is afforded broad discretion in handling trial procedure and the conduct of trial.[12]  "However, discretion has its limits."[13]  We must decide whether the cumulative effect of the district court's decisions and conduct amounted to an abuse of the court's broad discretion.[14]  Furthermore,

---

[9] 567 So. 2d 838 (Miss. 1990).

[10] *Id.* at 842.

[11] *See id.* at 839-40 (listing grounds for termination without mentioning an intent requirement).

[12] *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996).

[13] *Id.*

[14] *Id.*

even if the district court abused its discretion in making an evidentiary ruling, we will affirm that ruling if the district court's error was harmless.[15]

Assuming, *arguendo*, that the district court erred in allowing Taylor to present evidence regarding the arbitration provision, that error was harmless. The district court instructed the jury that breach of the arbitration provision "cannot support a breach of contract determination." The district court stated that Taylor was not "seeking to recover any sum of money for an alleged breach of the alleged arbitration clause." The district court reiterated that the arbitration issue should only be considered with regards to the Title VII and Title IX claims, which the jury rejected. Further, the district court explained precisely how the jury could reach a verdict for Taylor on the breach of contract claim—by finding that Jackson State did not have cause to fire her. Any error was harmless and does not justify ordering a new trial.

Jackson State also argues that the district court improperly challenged the credibility of witnesses in front of the jury. Jackson State did not object at trial, so we review for plain error.[16] "Plain error review requires four determinations: whether there was error at all; whether it was plain or obvious; whether the defendant has been substantially harmed by the error; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice."[17] Generally, a judge "may comment on the evidence . . . [and] question witnesses and elicit facts not yet adduced or clarify those previously presented," but must do so in a neutral

---

[15] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 581 (5th Cir. 2004) (quoting *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002)).

[16] *Rojas v. Richardson*, 713 F.2d 116, 117 (5th Cir. 1983).

[17] *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir 2012) (citing *United States v. Olano*, 507 U.S. 725 (1993); *United States v. Infante*, 404 F.3d 376, 394 (5th Cir. 2005)).

manner.[18]  The question for this court is whether the district court "stray[ed] from neutrality" in its interactions with witnesses.[19]

Jackson State contends that the district court did not act with neutrality when interacting with two witnesses.  First, the court questioned Marchetta Parker, a member of Taylor's team, who accused Taylor of sexual harassment. The court questioned Parker about what Taylor did, if anything, that Parker believed amounted to sexual harassment.  Jackson State claimed that it had cause to fire Taylor because she sexually harassed her players.  Asking a player to clarify how she was harassed when the question of harassment was before the jury does not constitute plain error.

Second, Jackson State argues that the district court questioned Shaneese McLin, another member of Taylor's team, in a manner that suggested that McLin had discussed her testimony with other witnesses.  The court asked her about instances, brought up on cross-examination, when McLin dined and visited with other team members during trial.  A judge is permitted to clarify facts previously presented by a witness.[20]  The court's questioning does not amount to plain error.  Moreover, if the court's questioning created any more prejudice than McLin's cross-examination, it was slight.  Therefore, even if the court erred in its questioning, that error did not affect Jackson State's substantial rights.[21]

Further, the district court instructed the jury that "you may not rely upon any impressions that you have as to the court's view of the facts in this case."  The court specifically admonished the jury not to draw any conclusions from its questioning of any witnesses, stating that "you, the jury, would not

---

[18] *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979) (citations omitted).
[19] *Id.*
[20] *Id.* (citation omitted).
[21] *See United States v. Bermea*, 30 F.3d 1539, 1571 (5th Cir. 1994).

No. 17-60856

have any idea as to why I asked some of those questions." We have held that a curative instructions like those given by the district court operate against a finding of plain error.[22] Considering the record as a whole, the district court's questioning of witnesses does not constitute plain error or grounds for a new trial.

## III

Jackson State argues that this court should reverse and render judgment on Taylor's privacy claim because she failed to prove any element of her claim. We conclude that Taylor's privacy claim fails as a matter of law.

For matters tried to the bench, "we review a trial court's findings of fact for clear error and its conclusions of law de novo."[23] "Under clear error review, if the trial court's factual findings are 'plausible in light of the record viewed in its entirety, we must accept them, even though we might have weighed the evidence differently if we had been sitting as a trier of fact.'"[24]

Taylor argues that Jackson State invaded her privacy when it released documents to *The Clarion Ledger* regarding her potential termination. Jackson State released nine pages of documents related to Taylor. Five of those pages related to Taylor's complaint that Jackson State supported men's teams and coaches to a greater degree than her team. Those five pages did not mention any allegations against Taylor. The remaining four pages apprised Taylor of the allegations against her, notified Taylor that she was being placed on administrative leave, and informed Taylor that the university intended to terminate her employment. The allegations were described as:

- Student and Student-Athlete Well-Being

---

[22] *United States v. Lankford*, 196 F.3d 563, 573 (5th Cir. 1999); *Bermea*, 30 F.3d at 1571-72; *see also Richmond v. Horace Mann Ins. Co.*, 480 F. App'x 747, 749-50 (5th Cir. 2010).

[23] *Ali v. Stephens*, 822 F.3d 776, 783 (5th Cir. 2016) (citing *Garner v. Kennedy*, 713 F.3d 237, 242 (5th Cir. 2013)).

[24] *Id.* (quoting *Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 296 (5th Cir. 2008)).

No. 17-60856

-Sexual Orientation Harassment/Gender Stereotyping
-Emotional and Verbal Abuse
- Violation of University Policy
-Per diem Policy
-Travel and Reimbursement Policy
- Misappropriation of University Funds
-Per diem to Family Member
-Handling of Laundry Money
-Airline Ticket Purchase for Family Member(s)
- Academic Standards and Practices of the Program
-Forcing and or coercing student-athletes to change class schedules
-Threats of punitive outcomes for failure to keep athletic obligations (i.e., practice) vs. academic obligations (attending class).

Taylor claims that Jackson State invaded her privacy by publicly disclosing private facts about her life. The Second Restatement of Torts, which has been adopted by Mississippi,[25] provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>> (a) would be highly offensive to a reasonable person, and
>> (b) is not of legitimate concern to the public.[26]

Accordingly, to recover on her claim for invasion of privacy, Taylor must prove (1) that Jackson State gave publicity to private facts (2) that would be highly offensive to a reasonable person and (3) that were not of legitimate concern to the public.

Because we conclude that the facts disclosed by Jackson State were of legitimate concern to the public, we reverse the district court's judgment. The Second Restatement provides that "[o]ne who voluntarily places himself in the public eye, by engaging in public activities, or by assuming a prominent role in

[25] *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 291 (Miss. 2007); *Young v. Jackson*, 572 So. 2d 378, 382 (Miss. 1990).

[26] RESTATEMENT (SECOND) OF TORTS § 652D (AM. LAW INST. 1977).

institutions . . . having general . . . social or similar public interest . . . cannot complain when he is given publicity that he has sought."[27]  Further, "publicity to information concerning either voluntary or involuntary public figures is not limited to the particular events that arouse the interest of the public."[28]  That interest can extend "to further information concerning the individual and to facts about him, which are not public and which, in the case of one who had not become a public figure, would be regarded as an invasion of his purely private life."[29]  This case fits clearly within that realm.  Taylor admitted that as a head coach at a major public university, she was in the public eye.  The public's interest extends to the reason for her termination.

The Second Restatement also provides that "matters of the kind customarily regarded as 'news'" are within the scope of legitimate public concern.[30]  Once again, Taylor admitted that the media had an interest in the events surrounding her termination.  She stated that it is the media's responsibility "to report [on] any sports or activities . . . going on" at Mississippi universities.  When asked if her termination was a matter of public interest, she answered, "Correct."  We agree.

The district court determined that the information released by Jackson State was of interest to the public but was not a matter of legitimate concern.[31]  The court concluded that the documents fell within the Mississippi Public Records Act's exception for "personnel records" and that Jackson State violated

---

[27] *Id.* § 652D cmt. e.

[28] *Id.* § 652D cmt. h.

[29] *Id.*

[30] *Id.* § 652D cmt. g; *see also City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (defining public concern in the First Amendment context as "something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication").

[31] *Taylor-Travis v. Jackson State Univ.*, No. 3:12-CV-51-HTW-LRA, 2014 WL 12779207, at *6-8 (S.D. Miss. Aug. 1, 2014).

its own policies by releasing the documents.[32]  However, this is a common-law invasion of privacy claim and not a claim for violation of the Mississippi Public Records Act.  Regardless of the alleged statutory violation, Taylor still had to prove the elements of the claim she brought.  Also, whether Jackson State violated its own policy has no bearing on whether the information it released constitutes a legitimate public concern.  A public employee's termination for, among other things, allegedly using public funds for private matters is a matter of legitimate concern to the public.  The district court clearly erred in finding otherwise. Taylor's privacy claim fails as a matter of law.

## IV

Taylor seeks a new trial on her Title IX retaliation claim, arguing that the district court abused its discretion when it excluded her proposed jury instruction on causation.  Taylor requested that the court give the jury a "but-for" causation instruction.  She argues that the district erred when it instructed the jury that Taylor may prevail if the jury finds "that she was terminated solely as a consequence of complaints alleging noncompliance with the substantive provisions of Title IX."  As discussed above, to prevail on appeal, Taylor's instruction must have been a correct statement of the law, not covered in the charge as a whole, and related to an important part of the trial that impaired her ability to present her claim.[33]

The parties dedicate their briefs to discussing the continued validity of this court's statement in *Lowrey v. Texas A&M University System* that plaintiffs may bring a retaliation claim under Title IX if an employee "suffer[s] unlawful retaliation solely as a consequence" of Title IX complaints.[34]  Taylor argues that the combination of three Supreme Court decisions overruled

---

[32] *Id.* at *8.

[33] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004).

[34] 117 F.3d 242, 254 (5th Cir. 1997).

No. 17-60856

*Lowrey* and implemented a but-for causation standard for all retaliation claims. Jackson State argues that *Lowrey* remains good law because two of the Supreme Court cases cited by Taylor did not address Title IX retaliation claims and the third did not clarify whether the Title IX complaint has to be the sole reason for the adverse employment action.

What neither party considers is whether *Lowrey* actually imposed a sole causation standard. A closer look at *Lowrey* reflects that it did not. In *Lowrey*, this court considered whether 34 C.F.R. § 100.7(e), the regulation implementing and enforcing Title IX, created "an implied private right of action to vindicate [its] anti-retaliation provisions."[35] The *Lowrey* court recognized that under *Lakoski v. James*,[36] Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions.[37] The court explained that although Title VII preempts "a private right of action for *employment discrimination* under title IX," Title VII "does not prohibit retaliation against complainants who challenge the misallocation of resources in violation of title IX, as such complaints are wholly unrelated to the discriminatory employment practices proscribed by title VII."[38] Thus, for a Title IX retaliation claim, courts must "'strip away' any allegations that would support a private cause of action for retaliation under title VII" and "distinguish between retaliation suffered by [the plaintiff] as a consequence of her participation in complaints and investigations challenging alleged employment discrimination by [the university] and retaliation suffered as a consequence of her participation in complaints and investigations challenging alleged violations of title IX."[39] The

---

[35] *Id.* at 249-50.
[36] 66 F.3d 751 (5th Cir. 1995).
[37] *Lowrey*, 117 F.3d at 247.
[38] *Id.* at 249.
[39] *Id.* at 247.

15

language seized on by the parties appears in a one-sentence summary of the court's legal conclusion included at the end of the opinion, which states "34 C.F.R. § 100.7(e) implies a private right of action for retaliation, narrowly tailored to the claims of employees who suffer unlawful retaliation solely as a consequence of complaints alleging noncompliance with the substantive provisions of title IX."[40]

Reading the phrase "solely as a consequence of complaints alleging noncompliance with the substantive provisions of title IX" as establishing a sole causation standard stretches *Lowrey* too far. *Lowrey* examined whether a Title IX retaliation claim could be based on a complaint about conduct prohibited by Title VII and held that it could not. *Lowrey* did not focus on the causation standard in Title IX retaliation claims. To the extent that it addressed that issue, *Lowrey* stated that "the anti-retaliation provision of title IX is similar to those of title VII and the ADEA and should be accorded a similar interpretation."[41] Accordingly, *Lowrey* did not announce a sole causation standard for Title IX retaliation claims; it suggested that the causation standard for Title IX claims should be the same as the causation standard for Title VII claims while clarifying that complaints about conduct barred by Title VII could not form the basis of a Title IX claim.

Regardless, a new trial is not warranted because the district court's instruction "substantially covered"[42] the correct standard: that there must be a "causal connection" between the Title IX complaint and the adverse employment action.[43] The district court gave the following instruction on the Title IX claim:

---

[40] *Id.* at 254.
[41] *Id.* at 252 n.18.
[42] *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004).
[43] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (stating that, to recover under Title VII, a plaintiff must show that "a causal link exists between the protected activity and

To establish a claim of retaliation under Title IX, plaintiff must demonstrate the following by a preponderance of the evidence: One, protected activity under Title IX; two, an adverse employment action; and three, a causal connection between the two, that is, a causal connection between exercise of the protected activity under Title IX and an adverse employment action.

Because a Title IX retaliation claim only covers conduct protected by Title IX, the plaintiff may prevail only if you, the jury, find that she was terminated solely as a consequence of complaints alleging noncompliance with the substantive provisions of Title IX. It is not enough that you may believe plaintiff was terminated for complaints related to her own individual employment, for that is not protected activity covered by Title IX.

Even if you find that plaintiff engaged in conduct protected by Title IX, plaintiff also bears the burden of proving a causal link between the two, between any Title IX protected activity and termination of her employment. Her subjective belief is insufficient to prove that protected activity under Title IX resulted in her termination. Again, the plaintiff here would have to prove this matter before you.

The district court's instruction substantially covered the causation standard. The first paragraph states that the plaintiff must show "a causal connection between exercise of the protected activity under Title IX and an adverse employment action" without elaborating upon what qualifies as a "causal connection." Similarly, the third paragraph states that a plaintiff must prove a "causal link" between the protected activity and termination of her employment without further elaboration. Neither paragraph one nor paragraph three contains language that would lead a jury to believe that the protected activity must be the sole reason for Taylor's termination.

---

the adverse employment action"); *Lowrey*, 117 F.3d at 252 n.18 ("[T]he anti-retaliation provision of title IX is similar to those of title VII and the ADEA and should be accorded a similar interpretation."); *see also Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (per curiam) ("To establish a prima facie case of retaliation [under Title IX], the plaintiff must show that . . . a causal connection exists between the protected activity and the adverse employment action.").

No. 17-60856

While the second paragraph states that Taylor can only prevail if she was terminated "solely as a consequence of complaints alleging noncompliance with the substantive provisions of Title IX," that statement must be read in context of the entire paragraph. The role of the second paragraph was not to modify the requisite causal connection between Taylor's protected activity and her termination—a topic addressed in paragraphs one and three—but to explain *Lowrey*'s holding that a Title IX retaliation claim cannot be based on Title VII-related "complaints related to [Taylor's] own individual employment." Accordingly, the statement that Taylor can only prevail if she was terminated "solely as a consequence of complaints alleging noncompliance with the substantive provisions of Title IX" should be read as distinguishing complaints about noncompliance with Title IX from "complaints related to [Taylor's] own individual employment," not as establishing a causation standard. Consequently, while the district court's instruction is not a model of clarity, it did not impose a heightened causation standard. Denying Taylor's proposed jury instruction was not an abuse of discretion or grounds for a new trial.

*     *     *

For the foregoing reasons, we AFFIRM the district court's judgment regarding the breach of contract claim and the Title IX retaliation claim. We REVERSE the district court's judgment on Taylor's invasion of privacy claim and REMAND to the district court with instructions to enter judgment in favor of Jackson State on that claim.