# United States Court of Appeals for the Fifth Circuit

---

No. 23-10167

---

United States Court of Appeals
Fifth Circuit

**FILED**

January 31, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ERIC SALVADOR PENA,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CR-483-1

---

Before SMITH, ELROD, and GRAVES, *Circuit Judges*.
JAMES E. GRAVES, JR., *Circuit Judge*:

Defendant Eric Salvador Pena appeals his sentence of 63 months of incarceration and 3 years of supervised release. Pena argues that the district court (1) erred in applying an enhanced base offense level and (2) committed procedural error in imposing a top-of-the-guideline sentence. We disagree. Accordingly, we AFFIRM.

## Background

Eric Salvador Pena, who struggled with a drug addiction for years, had a brief relapse in his sobriety in June 2021. Pena began gambling at "make-

shift" game rooms after losing his employment during the COVID-19 pandemic. On a visit to The Rock gambling room, Pena met Ada Hernandez, a distributor of methamphetamine. Hernandez began selling illegal drugs to Pena.

On June 9, 2021, a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") confidential informant contacted Hernandez and inquired about the availability of firearms for sale. Hernandez told Pena that a customer wanted to purchase a firearm, and Pena informed Hernandez that he had a firearm for sale. Subsequently, Hernandez arranged for the ATF confidential informant to purchase a firearm for $450 from Pena, a convicted felon.

On June 10, 2021, Pena and Hernandez met the ATF confidential informant The Rock gambling room. Pena sold the firearm to the ATF confidential informant, and the ATF confidential informant gave Hernandez $50 for brokering the transaction.

Less than a month after selling the firearm, Pena resumed his sobriety. Pena regained employment as a plumber, became a more active father, and began fully complying with the conditions of his parole.

But on October 21, 2021, during a routine visit with his supervisor parole officer, Pena was arrested for possession of a firearm by a convicted felon. Pena pled guilty on April 21, 2022. The district court accepted Pena's guilty plea and scheduled a sentencing hearing for September 29, 2022.

The Presentence Report (PSR) recommended a "20" base offense level because the semiautomatic firearm was "capable of accepting a large capacity magazine." U.S. SEN'T GUIDELINES MANUAL § 2K2.1(a)(4)(B) (U.S. SENT'G COMM'N 2023). The offense level was reduced to "17" in light of Pena's acceptance of responsibility. Pena's

No. 23-10167

criminal history and offense level combined provided an advisory guideline range of 51 to 63 months of incarceration.

After the PSR was submitted, Pena filed an objection contending that the correct total offense level was "12" with a guideline range of 30-37 months. Pena argued that because the government did not provide sufficient evidence that the semiautomatic firearm he sold was "capable of accepting a large capacity magazine," the "20" base offense level was unwarranted.

Citing *United States v. Luna-Gonzalez,* 34 F.4th 479 (5th Cir. 2022), Pena construed "capable of accepting the magazine" to mean that a firearm must perform with a fully loaded magazine attached to it. Thus, because the firearm he sold did not work with the fully loaded magazine attached to it, Pena argued that the firearm and the magazine were not compatible.

In an addendum to the PSR, the probation officer informed the court that a special agent conducted two firearms tests and that the second test confirmed compatibility. During the first test, the firearm's magazine was filled to maximum capacity and the firearm jammed after four rounds were discharged. During the second test, the firearm's magazine was loaded with sixteen rounds of ammunition and the firearm discharged sixteen rounds. The Sentencing Guidelines provide that a semiautomatic firearm accepts a large capacity magazine if the attached magazine "accept[s] more than 15 rounds of ammunition." U.S. SEN'T GUIDELINES MANUAL § 2K2.1 cmt. n.2 (U.S. SENT'G COMM'N 2023). The probation officer concluded that the enhanced offense level was appropriate.

The district court heard testimony and observed a video of the second firearms test. At the close of the hearing, the district court overruled Pena's objection. The district court acknowledged that the video proved that "by a preponderance of evidence" the firearm and magazine were "capable and compatible of holding at least 15 bullets." The district court sentenced Pena

No. 23-10167

to 63 months of incarceration with 3 years of supervised release. This appeal followed.

**Standard of Review**

A district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo* and its factual findings are reviewed for clear error. *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). Under clear error review, if the district court's factual findings are plausible in light of the record viewed in its entirety, the factual findings must be accepted. *Taylor-Travis v. Jackson State University*, 984 F.3d 1107, 1116 (5th Cir. 2021). The Government must show "by a preponderance of the evidence, the facts necessary to support an elevated base offense level." *Luna-Gonzalez*, 34 F.4th at 480. The Sentencing Guidelines provide that an offense level of 20 is appropriate if "the (i) offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (ii) defendant . . . was a prohibited person at the time [of] the offense." U.S. SEN'T GUIDELINES MANUAL § 2K2.1(a)(4)(B) (U.S. SENT'G COMM'N 2023). The Sentencing Guidelines further provide that to be capable of accepting a large capacity magazine, a semiautomatic firearm has a "magazine or similar device that could accept more than 15 rounds of ammunition" attached to it. U.S. SEN'T GUIDELINES MANUAL § 2K2.1 cmt. n.2 (U.S. SENT'G COMM'N 2023).

When reviewing a criminal sentence, this court engages in two steps. First, we determine whether the district court committed a significant procedural error under harmless error review. *United States v. Coto-Mendoza*, 986 F.3d 583, 586 (5th Cir. 2021); *United States v. Robinson*, 741 F.3d 588, 598 (5th Cir. 2014). Significant procedural errors are, for example, "failing to calculate (or improperly calculating) the Guidelines range . . . failing to consider the 18 U.S.C § 3553(a) sentencing factors," or "selecting a sentence

4

No. 23-10167

based on clearly erroneous facts . . ." *Gall v. United States*, 552 U.S. 38, 51 (2007). If there is a significant procedural error, then we remand unless the proponent of the sentence shows that the error did not affect the determination of the imposed sentence. *Coto-Mendoza*, 986 F.3d at 586.

If there is not a significant procedural error, we engage in the second step of review by considering the substantive reasonableness of the sentence imposed under an abuse of discretion standard. *Gall*, 552 U.S. at 51. When a sentence is properly calculated and within-guidelines, a rebuttable presumption of reasonableness is applied. *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). If the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors, the presumption is rebutted. *Id.*

## Analysis

First, Mr. Pena is a convicted felon and, thus, does not argue that he was a prohibited person at the time of the offense. Instead, he argues that the semiautomatic firearm in his possession was not "capable of accepting" a large capacity magazine. Specifically, Pena contends that under *Luna-Gonzalez* the semiautomatic firearm failed to meet the compatibility requirement.

In *Luna-Gonzalez*, the defendant pleaded guilty to possession of firearm by an illegal alien pursuant to 18 U.S.C. § 922(g)(5)(A). *Luna-Gonzalez*, 34 F.4th at 480. At the conclusion of the sentencing, he appealed the district court's imposition of an elevated base offense level for possessing "a semiautomatic firearm that is capable of accepting a large capacity magazine." *Id.* He argued that the government "failed to prove that (1) the firearm and magazine were compatible, and (2) the firearm could fire multiple rounds without reloading." *Id.*

The *Luna-Gonzalez* panel vacated his sentence on two grounds. First, the panel held that the government failed to meet the compatibility requirement by introducing "zero evidence (let alone a preponderance) providing that the large-capacity magazine was compatible." *Id.* While the panel did not provide the "many ways" the government could have met this burden, it did conclude that an unsworn statement alleging that the magazine fits the firearm was insufficient. *Id.* Second, the panel rejected the government's proposition that the proximity of the magazine to the firearm suggests that it fits. *Id.* at 481. It reasoned that "closeness does not supplant compatibility; the magazine must actually fit." *Id.*

The instant case is distinguishable from *Luna-Gonzalez* because here the government did provide evidence showing that the firearm and magazine were compatible. During the second test, the firearm was able to load and shoot 16 rounds of ammunition with ease. A video recording of second firearm test was reviewed by the district court. The threshold for "capable of accepting" is more than 15 rounds of ammunition. U.S.S.G. § 2K2.1(a)(4)(B). Pena argues, however, that because the firearm jammed with a fully loaded magazine attached to it during the initial test, the firearm and the magazine failed to meet the compatibility requirement. However, *Luna-Gonzalez* does not require that a firearm have a fully loaded magazine attached to it to meet the compatibility requirement. Moreover, the plain meaning of the statute—in addition to this Circuit's interpretation of the statute—does not suggest that to be compatible with a firearm the magazine must be fully loaded. Thus, despite the firearm's inability to fire at maximum capacity during the first test, the government met the requisite "more than 15 rounds of ammunition" during the second test.

It is likely that a single firearm test demonstrating compatibility meets the preponderance of evidence burden of proof. *See Reed v. LKQ Corporation*, 436 F.Supp.3d 892, 898 (N.D. Tex. 2020) ("[P]roving a fact by a

preponderance of evidence means showing that the existence of a fact is more likely so than not.") Regardless, this court must accept plausible factual findings in light of the record. *Taylor-Travis*, 984 F.3d at 1116. Because the firearm in Pena's possession shot more than 15 rounds of ammunition with the magazine attached to it  pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the district court did not err in applying an enhanced base offense level.

Second, Pena contends that the district court selected his sentence based on "erroneous facts that [he] was a drug dealer who traffics in guns, is a gang member, and does not know how to be a man." First, Pena argues that there was no evidence of his being a drug dealer in the record. However, in the next sentence, Pena references the "PSR summary of an arrest in 2007 and an arrest in 2011" for dealing drugs. Second, there is evidence that Pena, at the very least, was affiliated with a gang. Pena told gang detectives he was a member of Tango Blast in 2011, and the ATF confidential informant who Pena sold the gun to believes that Pena knew Hernandez because Hernandez was a member of a female gang affiliated with Tango Blast. Furthermore, Pena concedes that he became affiliated with Tango Blast while in custody in 2014. To his credit, Pena maintains that since his release in 2014 he has not been involved in any street gang. However, the district court was not inclined to believe him given the evidence to the contrary, which was well within the district court's prerogative. Third, the district court only referenced Pena's manhood in response to Pena's statement that Pena "didn't know how to be a man." Therefore, viewing "these challenged remarks in their overall context," the district court did not base is top-of-the-guideline sentence on clearly erroneous facts and, thus, there was no significant procedural error. *United States v. Cortez-Rocha*, 644 F. App'x 296, 297 (5th Cir. 2016).

Additionally, the district court did not commit error for failing to consider the § 3553(a) sentencing factors. Pena contends that his presentation to the district court about why § 3553(a) failed to support a

sentence of 63 months of incarceration was completely neglected. He further claims that the district court's silence on these factors indicates improper consideration or clear error. However, in providing justifications for a sentence, the district court does not have to engage in "robotic incantations that each statutory factor has been considered." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)(quoting *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)). Furthermore, the district court did explain that its imposed sentence "reflects the seriousness of the crime, promotes respect for the law, provides just punishments for the offense, and affords adequate deterrence to criminal conduct." While Pena disagrees with the district court's balancing of the § 3553(a) factors, this alone is not sufficient for reversal. *United States v. Malone*, 828 F.3d 331, 342 (5th Cir. 2016).

Last, Pena argues that his sentence of 63 months is substantively unreasonable because of the erroneous facts the district court relied on to determine his sentence. Additionally, Pena contends that the district court gave great weight to his criminal history and ignored his years of being a law-abiding citizen. ECF 18, 57-58.

As stated before, Pena has not shown how the facts that are supported by the record—years of drug dealing and gang participation—are erroneous. Second, the district court did note his criminal history when weighing the § 3553(a) factors. However, the district court had the discretion to weigh his criminal history. Because Pena was on parole at the time he committed the instant offense, the district court considered it appropriate to sentence him to 63 months. *See* § 3553(a)(2)(A), (B), (C). Furthermore, "[Pena's] disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence." *See United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010). Therefore, Pena failed to rebut the presumption of reasonableness and failed

No. 23-10167

to show how the district court abused its discretion and imposed a substantively unreasonable sentence.

## Conclusion

For these reasons, we AFFIRM the district court's judgment imposing a 63-month sentence of incarceration and 3 years of supervised release.